## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION
## CASE NO. 5:09CV-121-R

TERRY POWELL, ET AL.                                                    PLAINTIFFS

V.

JIMMY TOSH, ET AL.                                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Defendants have filed a motion to strike Plaintiffs' Response to Defendants' Expert

Report (DN 236).  Plaintiffs have filed a response (DN 237).  Defendants have filed a reply (DN

242).  This matter is now ripe for adjudication.  For the following reasons, Defendants' motion to

strike (DN 236) IS DENIED.

Plaintiffs have filed a motion for class certification (DN 178).  Defendants have filed a

response (DN 191).  Plaintiffs have filed a reply (DN 220).  This matter is now ripe for

adjudication. For the following reasons, Plaintiffs' motion to certify a class (DN 178) is

GRANTED IN PART.

## BACKGROUND

Plaintiffs, residents and property owners in Marshall County, Kentucky, filed suit against

the defendants in May 2009.  Defendants Eric Howell, Ron Davis, and Heather Howell Davis

("Defendant Farmers") are Marshall County residents and property owners who have constructed

swine barns on their property, located on Brewers Highway ("Ron Davis Hog Barn") and Lela

Green Road ("Heather Howell Davis Barns").  Plaintiffs allege that, in the operation of these

swine barns, Defendant Farmers will from time to time pump accumulated swine waste into a

"deep pit" under the swine barns to be applied on row crop land owned by, or available to,

Defendant Farmers.  Plaintiffs have further alleged that the swine barns were built according to

the instructions of Tosh Farms General Partnership and pursuant to a Swine Service Agreement with Tosh Farms General Partnership.  Plaintiffs contend that these swine barns are a nuisance and have caused them injury.

While each plaintiff alleges that they suffer from "recurring intolerable noxious odors emanating from the Defendants' swine waste facilities constituting a nuisance and decreasing the value of [their] residence and real property," some plaintiffs allege other injuries. For example, Plaintiff Rhonda Free alleges personal injuries from the noxious odors including severe nausea, vomiting, respiratory problems, and water contamination while Plaintiffs Tommy and Bridget Powell also allege extreme stress and anxiety as a result of exposure to the noxious odors.

Plaintiffs have also brought claims against the Tosh Defendants: Jimmy Tosh; Tosh Farms, LLC; Bacon By Gosh, Inc.; Shiloh Hills, LLC; Pig Palace, LLC; and Tosh Pork, LLC. Jimmy Tosh and his family own several affiliated companies which are engaged in commercial swine farming in both Kentucky and Tennessee. Each of these companies is engaged in a particular aspect of the swine farming industry. For example, Tosh Pork, LLC, is the owner of the swine housed in Defendant Farmers' swine barns; Bacon by Gosh, Inc., is engaged in the transportation of swine; and Shiloh Hills, LLC, makes pre-cast concrete components for the use in farming. Tosh Farms, LLC, was dissolved in 2010 and its responsibilities seem to have been largely assumed by Tosh Pork, LLC.  Tosh Farms General Partnership ("Tosh Farms") coordinates the activities of the Tosh group of companies. At any given time these entities own nearly half a million swine at various stages of development. These entities contract with growers, like Defendant Farmers to raise these swine from juveniles to market-ready adults.

Several years ago, Tosh Farms sought to expand its business in Western Kentucky and began seeking additional growers including Defendant Farmers. There has been opposition to

this expansion including the filing of formal complaints with Kentucky state agencies. For example, in order to operate a hog barn, the owner or operator must be issued certain permits from the Kentucky Environmental and Public Protection Cabinet ("Cabinet") and the Kentucky Division of Water ("Division"). Several individuals opposed the issuance of permits to hog farm owners and operators by filing objections during the public comment period. Despite these objections, the necessary permits were issued and several hog barns are now in operation.

The Plaintiffs' Complaint sets out common law claims for temporary nuisance, permanent nuisance, trespass, negligence, negligence per se, product liability, gross negligence, civil conspiracy, negligent encouragement, and battery against each defendant.  Plaintiffs ask for their claims to be certified as a class action and proposed the following class definition:

> All residents and property owners within a 1.25 mile radius of the Ron Davis Tosh Farms Standard Hog Barn subject to the Tosh Swine Services Agreement and all residents and property owners within such radius of all other Tosh Farms Standard Hog Barn subject to the Tosh Services Agreement in Marshall, Hickman, Fulton, and Carlisle Counties, Kentucky as identified in the December 12, 2010 Report by Dr. Eric Wineger, subject to the provisions to opt out of such class and opt into such class as the Court may approve, and excluding the Defendants and their agents, employees, and related legal entities, in Marshall, Hickman, Fulton, and Carlisle Counties, in Kentucky.

Defendants oppose the certification of a class.

## DISCUSSION

### 1.  <u>Defendants' Motion to Strike</u>

Plaintiffs filed the report of their class action expert witness, Dr. Eric Winegar, entitled "Delineation of the Class From Measurements and personal Observation Data: Denton, KY and Similar Neighborhoods," ("Plaintiffs' Initial Report") on December 1, 2010 (DN 144).  Upon motion of Defendants and with no opposition from Plaintiffs, the court entered an agreed order extending current scheduling order deadlines and giving Defendants until April 15, 2011 to

disclose their class action experts and until April 22, 2011 to file their response memorandum to Plaintiffs' motion for class certification (DN 187).  Additionally, the agreed order stated that the Plaintiffs must depose Defendants' class action expert witness and file their reply memorandum in support of their motion for class certification on or before May 15, 2011.

Defendants served the report of their class action expert, Dr. Winges, on April 15, 2011 and filed their response to Plaintiffs' motion for class certification on April 22, 2011.  The deposition of Dr. Winges was completed on May 12.  Plaintiffs were granted three extensions to file their reply (DN 197, DN 214, and DN 218) and finally did so on June 15, 2011.  At the same time as filing their reply, Plaintiffs filed Dr. Winegar's response to the report of Dr. Winges, entitled "Response to Defendants' Expert Report: 'An Investigation of Alleged Odors from Livestock Barns in Kentucky" ("Plaintiffs' Response Report").  Defendants filed a motion to strike this report on August 8, 2011 (DN 236).

Defendants assert that Plaintiffs' Response Report should be stricken because it is untimely under the Court's scheduling order, untimely under Rule 26(a)(2)(D)(ii), and an improper attempt to revise and expand Plaintiffs' Initial Report.  Defendants' Motion to Strike, DN 236-1 at 1.  Plaintiffs assert that Defendants' motion to strike should be denied because, among other things, Defendants' motion was untimely, the Plaintiffs' Response Report was timely, and in the alternative, that any untimeliness was harmless.

Federal Rule of Evidence 26(a)(2)(D)(ii) states that such "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party" then the disclosure must be made "within 30 days after the other party's disclosure."  Rule 37(c)(1) further provides that a failure to provide information as required by Rule 26(a) results in the

inability of that party to "use the information or witness to supply evidence on a motion, at a hearing, or at trial" unless that failure was harmless or substantially justified.

Here, Plaintiffs' Response Report was offered to rebut the contentions of Defendants' expert witness, Dr. Winges.  For example, Table 6 in Plaintiffs' Response Report was offered as a reply to Defendants' assertion that Dr. Winegar did not conduct a valid odor investigation.  DN 220-1, at pages 17-18.  Additionally, the report does not contradict or change the opinion offered in Plaintiffs' Initial Report.  Plaintiffs' Response Report uses and provides the same analysis and the same data, even though some data appears in a different form than in Plaintiffs' Initial Report.  Therefore, Plaintiffs' Response Report is a proper rebuttal report.

Although the filing of Plaintiffs' Response Report was after the passing of Rule 26(a)(2)(D)(ii)'s thirty day deadline, the late filing was both substantially justified and harmless.  Plaintiffs were not able to depose Defendants' expert witness until May 12, 2011 and did not receive a transcript of that deposition until June 3, 2011.  Additionally, there is no indication that Defendants have suffered or will suffer any prejudice or harm in admitting the Plaintiffs' Response Report, especially in light of the fact that most if not all of the additional data cited in Plaintiffs' Response Report has already been provided to Defendants through the discovery process.  Accordingly, Defendants' motion to strike (DN 236) is DENIED.

### 2. **Plaintiffs' Motion for Class Certification**

The Court will next address Plaintiffs' motion to certify a class.  Plaintiffs assert that class certification is appropriate under both Rules 23(b)(2) and 23(b)(3).  However, the claims that Plaintiffs wish to certify are unclear.  Therefore, in the interests of efficiency, this Court will consider all claims and all Defendants as included in the class certification motion.

A district court has broad discretion in certifying a class action, but "it must exercise that discretion within the framework of Rule 23." *Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002). "The party seeking the class certification bears the burden of proof." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). First, the moving party must "satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation." *Coleman*, 296 F.3d at 446; *see* Fed. R. Civ. P. 23(a). The district court must conduct "a rigorous analysis" to ensure that "the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *see also Ball v. Union Carbide Corp.*, 385 F.3d 713, 727 (6th Cir. 2004); *In re Am. Med. Sys.*, 75 F.3d at 1078-79. A court may not certify a class that fails to satisfy all four prerequisites. *Ball*, 385 F.3d at 727. Second, in addition to satisfying Rule 23(a)'s prerequisites, the moving party "must demonstrate that the class fits under one of the three subdivisions of Rule 23(b)." *Coleman*, 296 F.3d at 446; Fed. R. Civ. P. 23(b); *see also Ball*, 385 F.3d at 727; *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998) (en banc).

## A. Rule 23(a) Prerequisites to Class Certification

Plaintiffs argue that certification is appropriate under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). To certify these classes, Plaintiffs must first demonstrate that Rule 23(a)'s prerequisites are satisfied. *See In re Am. Med. Sys.*, 75 F.3d at 1079. Rule 23(a) provides as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately
protect the interests of the class.

Fed. R. Civ. P. 23(a); *Olden v. LaFarge*, 383 F.3d 495, 507 (6th Cir. 2004).  The Court will

separately examine the Ron Davis Hog Barns and the other Tosh Farms Standard Hog Barns to

determine if the Rule 23(a) prerequisites are met.

       1.    *Numerosity*

A class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ.

P. 23(a)(1).  "There is no strict numerical test for determining impracticability of joinder."  *In re*

*Am. Med. Sys.*, 75 F.3d at 1079 (finding uncontested class estimate of over 150,000 satisfied

numerosity requirement); *see also Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir.

2005) (affirming district court's determination that proposed class was too speculative to satisfy

burden of proving numerosity); *Bacon v. Honda of America Mfg, Inc.*, 370 F.3d 565, 570 (6th

Cir. 2004) (finding proposed class of 800 current and former employees well beyond point in

which joinder would be feasible).  "Rather, '[t]he numerosity requirement requires examination

of the specific facts of each case and imposes no absolute limitations.'"  *In re Am. Med. Sys.*, 75

F.3d at 1079 (quoting *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980)); *see also Golden*, 404

F.3d at 965; *Bacon*, 370 F.3d at 570.  "However, sheer number of potential litigants in a class,

especially if it is more than several hundred, can be the only factor needed to satisfy Rule

23(a)(1)."  *Bacon*, 370 F.3d at 570; *see also In re Am. Med. Sys.*, 75 F.3d at 1079.  "[W]hile 'the

exact number of class members need not be pleaded or proved, impracticability of joinder must

be positively shown, and cannot be speculative.'"  *Golden*, 404 F.3d at 965-66 (citation omitted).

In addition to "hard numbers" a court may also consider "(1) judicial economy arising from the

avoidance of a multiplicity of actions; (2) the geographic dispersion of class members; (3) the

financial resources of class members; (4) the ability of claimants to institute individual lawsuits;

(5) the amount of each member's individual claim; (6) knowledge of the names and existence of the potential class members; and (7) whether potential class members have already joined other actions." *Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 410 (S.D.N.Y. 1998).

### a.  Ron Davis Hog Barn

Plaintiffs state that this class would include approximately 450 plaintiffs within a 1.25 mile radius of the Ron Davis Hog Barn, based on census data.  Defendants state that, due to the limited geographic area, all plaintiffs could be determined and joined in the action.  While this Court agrees that joinder of all Plaintiffs is not theoretically impossible, Plaintiffs need only show that it is impracticable.  *Askin*, 178 F.R.D. at 409.  Managing a suit with hundreds of named plaintiffs would be difficult under the best of circumstances.  Given the particularly contentious nature of this suit, managing hundreds of named plaintiffs would be highly impracticable.  Discovery, even at the reduced rate ordered by this Court, would likely involve thousands of interrogatories, requests for admission, and requests for production.  The combined expenditures for such discovery could easily exceed the value of the claims.

Looking at the non-numerical factors also favors finding the numerosity requirements met.  It is unclear what value, if any, should be attached to the Plaintiffs' claims, therefore making individual suits impracticable.  Similarly, there is no evidence that there would be a benefit in forcing the class members to bring individual actions, nor that individual plaintiffs have the financial means of supporting individual actions.  In light of the above, the numerosity requirement has been met by the Plaintiffs surrounding the Ron Davis Hog Barn.

### b.  All Hog Barns Operating Under a Tosh Farms Swine Service Agreement

Plaintiffs estimate that thousands of potential plaintiffs are available if all Tosh Hog Barns in Western Kentucky are included in the class.  For the reasons discussed above, when including all hog barns the numerosity requirement is clearly met.

2.    *Commonality*

The second Rule 23(a) prerequisite for class certification is that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This requirement is generally satisfied where there is a "single issue common to all members of the class."  *In re Am. Med. Sys.*, 75 F. 3d at 1080 (6th Cir. 1996).  Though "there need only be one question common to the class," not every common question will suffice for certification purposes.  *Sprague*, 133 F.3d at 397.  The resolution of the common question must "advance the litigation."  *Id.*  Recently, the Supreme Court has stated that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (internal quotations omitted).  The claims of the class members must depend upon a common contention; additionally, that common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*

a.  Ron Davis Hog Barn

Plaintiffs assert that common issues of law or fact among the proposed class include the following: "Do the actions of the Defendants (1) create a temporary nuisance; (2) create a permanent nuisance; (3) constitute a trespass on another's property; (4) constitute a negligent breach of duty owed another, to the injury of the other; (5) constitute negligence per se; (6) constitute a civil conspiracy; (7) done in a manner that constitutes wanton, intentional, or grossly

negligent behavior; and (8) warrant injunctive relief." Plaintiffs' Motion for Certification, DN 178 at 23.

To support their contention of commonality, Plaintiffs have offered a report prepared by their expert, Dr. Winegar, addressing the area of impact around one of Defendants' facilities, the Ron Davis Hog Farm.  Dr. Winegar's report uses meteorological data, chemical data related to particular chemicals associated with hog farm emissions, and sensory data gathered by independent observers to come to the conclusion that the alleged effects from the Ron Davis Hog Barns extend to the proposed class boundary of 1.25 miles.  This report offers sufficient evidence to support Plaintiffs' claims that all residents and property owners within a 1.25 mile radius of the Ron Davis Hog Barn are similarly affected by that same barn.  The proposed class members have suffered the same injury.

Additionally, all potential class members surrounding the Ron Davis Hog Barns assert a common contention that the operation of the Ron Davis Hog Barns has caused noxious odors and decreased property values.  While the frequency and intensity of the effects suffered by those within the proposed class may differ, there are common questions of law and fact capable of class-wide resolution in regards to liability that can be resolved prior to any injunction or individual damage assessments, if necessary.  Accordingly, there is commonality between Plaintiffs situated around the Ron Davis Hog Barn.

### b.  All Hog Barns Operating Under a Tosh Farms Swine Service Agreement

Plaintiffs have also asked that all Tosh Farms Standard Hog Barns subject to the Tosh Services Agreement in Marshall, Hickman, Fulton, and Carlisle Counties, Kentucky be included within the proposed class definition.  However, no scientific study has been conducted within those areas and surrounding those other hog barns to support the contention of commonality

among the whole class.  Rather, Plaintiffs' expert generalized his study of the Ron Davis Hog

Barn to the areas containing the other similar hog barns by comparing meteorological data of

Benton and Fulton, Kentucky.  Plaintiffs' expert concluded that because the weather conditions

and the barn operations are largely similar, the areas surrounding the other hog barns would

suffer a similar impact.

However, the Court finds these assertions unconvincing.  Plaintiffs' expert has only done

a basic comparison of the weather in two locations, but has done nothing to verify that what

appears to be similar weather results in similar scent conditions.  Although Plaintiffs' expert has

compared satellite imagery of the Ron Davis Hog Barn to a second hog barn and noted various

similarities, there is no significant evidence that these barns are sufficiently the same as the Ron

Davis Hog Barn so that the potential class members surrounding these other barns suffered the

same injury as the potential class members surrounding the Ron Davis Hog Barn.

Additionally, Mr. Tosh has submitted an affidavit stating that the design of the Ron Davis

Hog Barn differs from other hog barns (other than the Howell Davis hog barns) in that the

ventilation systems have a different fan configuration than other barns constructed by Pig Palace.

Tosh Affidavit, DN 191-7, at 30.  This demonstrates that the neighbors in the vicinity of each of

the other barns have the potential to be suffering from different injuries requiring individualized

proof of liability not aided by allowing the litigation against those barns to proceed as one

common class action.  Accordingly, there is no commonality between the other Tosh Farms

Standard Hog Barns, but only amongst the potential plaintiffs within the vicinity of the Ron

Davis Hog Barn.

*3.      Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality prerequisite "determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague*, 133 F.3d at 399 (citing *Am. Med. Sys.*, 75 F.3d at 1082). "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *Am. Med. Sys.*, 75 F.3d at 1082). "[F]or the district court to conclude that the typicality requirement is satisfied, 'a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law.'" *Id.* (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 n.31 (6th Cir. 1976)). On the other hand, a claim, if proven, is not typical if it would only prove the named plaintiff's claim. *See Sprague*, 133 F.3d at 399.

a. Ron Davis Hog Barn

The claims of the named Plaintiffs who reside or own property within 1.25 miles of the Ron Davis Hog Barn are typical of claims that might be brought by potential plaintiffs within that same area. Similar to the commonality requirement, all Plaintiffs within the area of the Ron Davis Hog Barn have allegedly suffered similar effects, albeit with varying frequency and degree, as a result of the construction and operation of the Ron Davis Hog Barn. It is this same course of conduct that gives rise to the claims of all other class members. Additionally, for many of the alleged legal theories, the claims of all class members are the same.[1] If a named plaintiff establishes liability on the part of the Defendants, that would establish liability for the entire

---

[1]This Court will discuss later which particular claims are appropriate for class certification.

class.  Accordingly, the requirement of typicality is satisfied with respect to the Ron Davis Hog Barns.

### b.  All Hog Barns Operating Under a Tosh Farms Swine Service Agreement

There is no indication that the claims of the class representatives would be typical of the claims of a class including all other hog barns.   While the same legal theories would likely be used for each barn, a named Plaintiff establishing liability at one barn would not tend to establish liability at a second barn.  While the Plaintiffs' expert has attempted to show that there are similar conditions at the various barns, there is not enough factual similarity to justify named Plaintiffs surrounding one barn representing Plaintiffs surrounding another barn; nor are the events giving rise to the claims the same since each barn is owned and operated individually.  In addition, since factors such as applying manure to crops adjacent to the hog barn may be contributing to the effects suffered at any particular barn, each barn would require particularized proof to address discrepancies between these factors.  Accordingly, the requirement of typicality is not satisfied as to the other hog barns in Western Kentucky.

### 4.    Adequacy of Representation

The final prerequisite Plaintiffs must satisfy is that "the representative parties will fairly and adequately protect the interests of the class."  Rule 23(a)(4).  The Sixth Circuit has held that "[t]here are two criteria for determining whether the representation of the class will be adequate: (1) The representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."  *Senter*, 532 F.2d at 524-25.

### a.  Ron Davis Hog Barn

The various named Plaintiffs in the vicinity of the Ron Davis Hog Barn have common interests with others in the vicinity of the barn and appear to be willing to vigorously prosecute the interests of the class.  Furthermore, Defendant does not offer any substantial argument that Plaintiffs' counsel are not qualified or will not adequately represent the class.   Accordingly, the fourth requirement of Rule 23(a) is met as to the Ron Davis Hog Barns.

<u>b.  All Hog Barns Operating Under a Tosh Farms Swine Service Agreement</u>

Since the named plaintiffs appear to be limited to those in the vicinity of the Ron Davis Hog Barn and in fact include some named plaintiffs who have moved from the vicinity, their interests are not necessarily common with those of unnamed class members who reside or own property surrounding the other hog barns.  Certain settlement agreements favoring the Ron Davis Hog Barn over other barns could, in fact, place the named plaintiffs at odds with unnamed plaintiffs surrounding other barns.  Similarly, there is no indication that the named plaintiffs will vigorously prosecute the interests of the class at other locations, as Plaintiffs were not even willing to collect scientific data at the other locations.  Accordingly, the plaintiffs have failed to meet the fourth requirement of adequacy of representation for the barns other than the Ron Davis Hog Barn.

**B.  Rule 23(b) Requirements**

In addition to meeting the requirements of Rule 23(a), parties seeking class certification must show that the purported class meets at least one of the requirements set forth in Rule 23(b). Fed. R. Civ. P. 23(b).  Here, Plaintiffs have moved to certify their class under both Rule 23(b)(2) and 23(b)(3).  Because the Court has determined that only a class comprised of potential plaintiffs surrounding the Ron Davis Hog Barn has met the 23(a) prerequisites, the Court's discussion of the 23(b) requirements will be limited to that class.

*1.  Rule 23(b)(2) Certification*

Rule 23(b)(2) provides that a class action may be maintained if "the party opposing the

class has acted or refused to act on grounds generally applicable to the class, thereby making

appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a

whole . . . ."  Fed. R. Civ. Proc. 23(b)(2).  A 23(b)(2) class is only appropriate if the requests for

injunctive relief predominate over the requests for damages.  As the Fifth Circuit has noted:

> monetary relief predominates in (b)(2) class actions unless it is incidental to
> requested injunctive or declaratory relief.  By incidental, we mean damages that
> flow directly from liability to the class as a whole on the claims forming the basis
> of the injunctive or declaratory relief . . . such damages should at least be capable
> of computation by means of objective standards and not dependent in any
> significant way on the intangible, subjective differences of each class member's
> circumstances.

Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998)(internal citations omitted).

Generally, a 23(b)(2) class should be "homogenous and therefore cohesive."  MANUAL FOR

COMPLEX LITIGATION (FOURTH) § 21.142 (2004). "This presumption can be destroyed by

showing individualized issues as to liability or remedy." *Id.*

While the Plaintiffs claim to disavow any damages for the current class certification

motion, their actions indicate otherwise.  They have included claims that do not lend themselves

to injunctive relief, included Plaintiffs that are not eligible and would not benefit from injunctive

relief, and suggested that damage claims should be adjudicated following a liability

determination.[2]  Any damage calculation would necessarily involve individualized

determinations, as the Plaintiffs' own expert has stated that the frequency and intensity varies by

direction.  Additionally, the amount of each class member's damages would be dependent on

---

[2]Plaintiffs have included named class members who no longer reside in the area of the hog barn,
and who therefore would receive no benefit from the issuance of an injunction.  Accordingly,
their participation must be indicative of their desire to receive monetary compensation.

intangible, subjective differences of each class member's circumstances as the alleged odor has affected each potential plaintiff differently.

Plaintiffs have also specifically stated that they wish to pursue punitive damages within their class action claim.  Since Plaintiffs have claimed both compensatory and punitive damages for many of their claims, the claim for damages overshadow the claim for injunctive relief. Accordingly, a Rule 23(b)(2) class is inappropriate.  *Accord Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) (Cannot certify a 23(b)(2) class unless the monetary relief is incidental to the injunctive or declaratory relief).

   2.   *Rule 23(b)(3) Certification*

A Rule 23(b)(3) class is appropriate only if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

For many of Plaintiffs' claim, such as nuisance and trespass, causation will be a critical element in establishing liability.  Defendants contend that the element of causation for Plaintiffs' claims cannot be established on a class-wide basis and instead must be determined on an individual basis, and so common questions of law or fact will not predominate over individual issues.  The Court disagrees.  For many of the claims, the question of liability and causation will be identical across the class.  Plaintiffs have produced evidence that the Ron Davis Hog Barn is the source of the alleged "recurring intolerable noxious odor" that is the basis of the complaint and that the odor is present throughout the entire class area.  Additionally, Plaintiffs have raised common allegations which would allow a determination of causation on a class-wide basis. Furthermore, many of Plaintiffs other claims will have identical questions of liability, such as the

claims for punitive damages and civil conspiracy which will focus on the conduct of the defendants and not on individual issues.  Accordingly, it will be possible to establish causation and liability on a class-wide basis.

The only remaining issue remaining, then, is whether the individualized damage claims defeat the Rule 23(b)(3) class.  In *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, the Sixth Circuit addressed this very issue.  Recognizing that there is a "need for a more efficient method of disposing of a large number of lawsuits arising out of . . . a single course of conduct," the Sixth Circuit stated that "no matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action." *Id.* at 1197.  "Where the defendant's liability can be determined on a class-wide basis because the cause of the [liability] is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy." *Id.*  Allowing the liability portion to proceed as a class action will help avoid "duplication of judicial effort" and prevent "separate actions from reaching inconsistent results with similar, if not identical, facts." If class liability is established, "individual members of the class still will be required to submit evidence concerning their particularized damage claims in subsequent proceedings."  *Id.*

Here, following a potential Plaintiffs' verdict in the liability phase of the class-action trial, this Court would encourage the parties to engage in informed settlement negotiations. Barring that, this Court would encourage both parties to submit to a magistrate or special master for damage determinations.  If that also fails, this Court would begin conducting individual jury trials on the damage claims until the parties have enough information to finalize settlement negotiations. 3 Newberg on Class Actions § 9.53 *et seq.* (4th ed. 2011).  The Court believes that if counsel will work with the Court, the parties can agree on a plan to streamline any damage

trial should Plaintiff's prevail on the issue of liability.  For instance, the Court may grant the parties a few days to craft a settlement after a verdict finding Defendants liable.  If settlement is not achieved the parties can agree to place the plaintiffs in groups of plaintiffs with similar damages and perhaps try representative cases with others being bound.  These are only suggestions, but the Court believes necessity will cause the parties to find an amenable procedure.  Otherwise the Court could hold individual trials with the same jury over the course of several weeks.

Finally, it would be more efficient to resolve the question of liability once via a class action trial rather than multiple times through individual suits.  To the extent that injunctive relief may be appropriate in addition to any alleged damages, the class action will be more efficient in allowing the residents to obtain such relief.  Accordingly, the court finds that common questions of fact or law predominate over individual members, and that a class action is superior to other available methods of adjudicating the controversy.

## C. Class Definition

Having determined that a class is properly certifiable as to the area surrounding the Ron Davis Hog Barns, the Court must now address the proposed class definition.  "Although not specifically mentioned in [Rule 23], the definition of the class is an essential prerequisite to maintaining a class action." *Brockman v. Barton Brands*, 2007 WL 4162920 at *2 (W.D. Ky. 2007)(internal citations omitted).  The class description must be "sufficiently definite that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.*  The plaintiffs have proposed the following definition:

> All residents and property owners within a 1.25 mile radius of the Ron Davis Tosh Farms Standard Hog Barn subject to the Tosh Swine Services Agreement and all residents and property owners within such radius of all other Tosh Farms Standard Hog Barn subject to the Tosh Swine Services Agreement in Marshall,

Hickman, Fulton, and Carlisle Counties, Kentucky as identified in the December 12, 2010 Report by Dr. Eric Wineger, subject to the provisions to opt out of such class and opt into such class as the Court may approve, and excluding the Defendants and their agents, employees, and related legal entities, in Marshall, Hickman, Fulton, and Carlisle Counties, in Kentucky.

As discussed above, class certification is only appropriate for the Ron Davis Hog Barn. Therefore, the language relating to other barns must be struck from the definition. Additionally, the language to opt in must be struck. Plaintiffs' expert has prepared a report stating that the barn produces an effect that extends 1.25 miles from the Ron Davis hog Barn in all directions. Allowing other plaintiffs outside of this delineated area to opt in would defeat the common issues shared in liability and subject to proof by expert testimony and would result in individualized liability testimony. Accordingly, no such plaintiffs are appropriate. While Defendants objected to the opt out language as well, since this Court only certified the action under Rule 23(b)(3) the opt out provision is required by due process and the objection to the language allowing for opt out is moot. The remaining definition is sufficiently definite to determine whether a particular individual is a member.

Finally, as pointed out by Defendants, some named Plaintiffs are not currently living within the defined area. Although Plaintiffs did not include any language in the proposed class definition referring to former residents, this Court will assume that the class action claims are being asserted on behalf of former as well as current residents and property owners.

Per the above discussion, the following class shall be certified:

All current and former residents and property owners within a 1.25 mile radius of the Ron Davis Tosh Farms Standard Hog Barn subject to the Tosh Swine Services Agreement and subject to the provisions to opt out of the class, and excluding the Defendants and their agents, employees, and related legal entities.

**D. Appropriate Claims**

The common questions of liability are only relevant for claims originating from the Ron Davis Hog Barn. Other allegations, such as contaminated well water and spills from transport trucks, have no common questions and are therefore not appropriate for class certification.

Count I is for temporary nuisance. This count is based on the odor released from the barns, and as such is appropriate for class certification.

Count II is for permanent nuisance. This count is based on the odor released from the barns, and as such is appropriate for class certification.

Count III is for trespass. It is based on noxious air particles originating from the hog barn, and is appropriate for class certification. To the extent it is based on any other claim, such as truck spills or well contamination as a result of underground waste, class certification is inappropriate.

Count IV is for negligence. To the extent that the negligence is derived from activities occurring centrally at the Ron Davis Hog Barn, class certification is appropriate. To the extent that the negligence involves individualized liability and damages, such as well contamination or transportation spills, class certification is not appropriate.

Count V is for negligence per se. Class certification is appropriate as per the discussion of Count IV.

Count VI is for product liability. To the extent that the alleged defect involves the spread of noxious odors, class certification is appropriate. Any other product liability claims suggested by Plaintiffs must be litigated on an individual basis.

Count VII is for punitive damages. Plaintiffs' claim for punitive damages will focus on the conduct of the defendants. Accordingly, for the claims otherwise certified as a class action, punitive damages may also be appropriate.

Count VIII is for civil conspiracy.  To the extent that the alleged conspiracy covers claims and actions otherwise certified, certification is appropriate.

Count IX is for negligent encouragement.  The claim for negligent encouragement has been dismissed by this Court and is therefore not included in the class action.

Count XI is for battery.  To the extent that the battery is a result of airborne odors and particles emanating from the Ron Davis Hog Barns, class certification is appropriate.

**E.  Appropriate Defendants**

Defendant Jimmy Tosh is allegedly a general partner in Tosh Farms General Partnership. In Kentucky, a general partner can be liable for the actions of a partnership under certain circumstances and a partner can be sued along with the partnership.  KYPRAC-MP § 16:17.  In addition, Plaintiffs have alleged that Tosh has personally committed acts of negligence in running or managing various entities, and such negligence is not shielded by the corporate entity. *Smith v. Isaacs*, 777 S.W.2d 912 (Ky. 1989).  Accordingly, Jimmy Tosh is an appropriate class defendant.

Defendant Tosh Farms, LLC was dissolved in 2010.  Plaintiffs therefore concede that certification of a class would be inappropriate.

Defendant Tosh Farms General Partnership was formerly a party to Swine Service Agreements with Ron Davis.  Accordingly, Tosh Farms General Partnership is an appropriate class defendant.

Defendant Pig Palace, LLC has never transacted business.  An unincorporated division of Tosh Pork, LLC named Pig Palace participates in the construction of the barns.  However, that division of Tosh Pork, LLC is included due to the fact that Tosh Pork, LLC is a Defendant.

Since Pig Palace, LLC has never transacted business, and the Pig Palace division is not a separate legal entity, Pig Palace LLC is not an appropriate class defendant.

Defendant Shiloh Hills, LLC provided allegedly defective parts for the construction of the Ron Davis Hog Barn.  Accordingly, for the time being, they are an appropriate class defendant.

Defendant Bacon By Gosh, Inc., is only alleged to transport the swine to and from the Ron Davis Hog Barn.  Since any claims involving spill as a result of transportation are not an appropriate class claim, Bacon By Gosh is not an appropriate class defendant.

Defendant Eric Howell is not involved in the claims certified for class action, and is therefore not an appropriate class defendant.

Defendant Ron Davis owns the barn against which the class was certified, and is therefore an appropriate class defendant.

Defendant Heather Howell Davis is not involved in the claims certified for class action, and is therefore not an appropriate class defendant.

Defendant Tosh Pork, LLC owns the hogs that are raised at the Ron Davis Hog Barn. Additionally, Tosh Pork, LLC also supports construction of the barns through at least one unincorporated division, Pig Palace, discussed above, and is therefore an appropriate class defendant.

## CONCLUSION

For the foregoing reasons, the Court hereby ORDERS  that a Rule 23(b)(3) class is CERTIFIED for Plaintiffs within 1.25 miles of the Ron Davis Hog Barn, as is consistent with this opinion.  The named Plaintiffs herein shall serve as class representatives on behalf of all Plaintiffs, defined as follows:

All current and former residents and property owners within a 1.25 mile radius of the Ron Davis Tosh Farms Standard Hog Barn subject to the Tosh Swine Services Agreement and subject to the provisions to opt out of the class, and excluding the Defendants and their agents, employees, and related legal entities.

IT IS FURTHER ORDERED that Plaintiff shall file with this Court a motion to appoint class counsel, outlining the relevant qualifications and experience of proposed counsel, within fourteen (14) days of the filing of this Order.  Defendants will have up to fourteen (14) days to respond.  Additionally, Plaintiff shall file with this Court a proposed notice to class members within fourteen (14) days of the filing of this Order.  Defendants will have up to fourteen (14) days to respond.

IT IS FURTHER ORDERED that a telephonic scheduling conference will take place on November 22, 2011 at 9:00 a.m. CST.  The Court will place the call to counsel.