UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09CV-121-R

TERRY POWELL, ET AL.                                                    PLAINTIFFS

V.

JIMMY TOSH, ET AL.                                                     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

By Order dated December 21, 2011 (DN 276), this Court vacated its Order partially

granting Plaintiffs' motion for class certification (DN 245) in order to further review the

appropriateness of class certification in this action.  That matter has been fully briefed.  On

January 6, 2012, Plaintiffs' moved for leave to amend their motion to certify the class (DN 281).

The Tosh Defendants have responded to Plaintiffs' motion (DN 282), and Plaintiffs have replied

(DN 283).  For the following reasons, Plaintiffs' motion to certify the class (DN 178) is

GRANTED and Plaintiffs' motion for leave to amend their motion to certify the class (DN 281)

is DENIED.

## BACKGROUND

Plaintiffs, residents and property owners in Marshall County, Kentucky, filed suit against

the defendants in May 2009.  Defendants Eric Howell, Ron Davis, and Heather Howell Davis

("Defendant Farmers") are Marshall County residents and property owners who have constructed

swine barns on their property, located on Brewers Highway ("Ron Davis Hog Barn") and Lela

Green Road ("Heather Howell Davis Barns").  Plaintiffs allege that, in the operation of these

swine barns, Defendant Farmers will from time to time pump accumulated swine waste into a

"deep pit" under the swine barns to be applied on row crop land owned by, or available to,

Defendant Farmers.  Plaintiffs have further alleged that the swine barns were built according to

the instructions of Tosh Farms General Partnership and pursuant to a Swine Service Agreement with Tosh Farms General Partnership.  Plaintiffs contend that these swine barns are a nuisance and have caused them injury.

While each plaintiff alleges that they suffer from "recurring intolerable noxious odors emanating from the Defendants' swine waste facilities constituting a nuisance and decreasing the value of [their] residence and real property," some plaintiffs allege other injuries. For example, Plaintiff Rhonda Free alleges personal injuries from the noxious odors including severe nausea, vomiting, respiratory problems, and water contamination while Plaintiffs Tommy and Bridget Powell also allege extreme stress and anxiety as a result of exposure to the noxious odors.

Plaintiffs have also brought claims against the Tosh Defendants: Jimmy Tosh; Tosh Farms, LLC; Bacon By Gosh, Inc.; Shiloh Hills, LLC; Pig Palace, LLC; and Tosh Pork, LLC. Jimmy Tosh and his family own several affiliated companies which are engaged in commercial swine farming in both Kentucky and Tennessee. Each of these companies is engaged in a particular aspect of the swine farming industry. For example, Tosh Pork, LLC, is the owner of the swine housed in Defendant Farmers' swine barns; Bacon by Gosh, Inc., is engaged in the transportation of swine; and Shiloh Hills, LLC, makes pre-cast concrete components for the use in farming. Tosh Farms, LLC, was dissolved in 2010 and its responsibilities seem to have been largely assumed by Tosh Pork, LLC.  Tosh Farms General Partnership ("Tosh Farms") coordinates the activities of the Tosh group of companies. At any given time these entities own nearly half a million swine at various stages of development. These entities contract with growers, like Defendant Farmers to raise these swine from juveniles to market-ready adults.

Several years ago, Tosh Farms sought to expand its business in Western Kentucky and began seeking additional growers including Defendant Farmers. There has been opposition to

this expansion including the filing of formal complaints with Kentucky state agencies. For example, in order to operate a hog barn, the owner or operator must be issued certain permits from the Kentucky Environmental and Public Protection Cabinet ("Cabinet") and the Kentucky Division of Water ("Division"). Several individuals opposed the issuance of permits to hog farm owners and operators by filing objections during the public comment period. Despite these objections, the necessary permits were issued and several hog barns are now in operation.

The Plaintiffs' Complaint sets out common law claims for temporary nuisance, permanent nuisance, trespass, negligence, negligence per se, product liability, gross negligence, civil conspiracy, negligent encouragement, and battery against each defendant. Plaintiffs ask for their claims to be certified as a class action and proposed the following class definition:

> All residents and property owners within a 1.25 mile radius of the Ron Davis Tosh Farms Standard Hog Barn subject to the Tosh Swine Services Agreement and all residents and property owners within such radius of all other Tosh Farms Standard Hog Barn subject to the Tosh Services Agreement in Marshall, Hickman, Fulton, and Carlisle Counties, Kentucky as identified in the December 12, 2010 Report by Dr. Eric Wineger, subject to the provisions to opt out of such class and opt into such class as the Court may approve, and excluding the Defendants and their agents, employees, and related legal entities, in Marshall, Hickman, Fulton, and Carlisle Counties, in Kentucky.

Defendants oppose the certification of a class.

## DISCUSSION

### I.     Plaintiffs' Motion for Leave to Amend Motion to Certify

Plaintiffs have moved for this Court to grant leave to file an amended motion to certify the class in this action. Plaintiffs state that the purpose of their amended motion is to clarify arguments related to class certification, to the class defendants, and to the allegations pled by Plaintiffs in their Complaint, Amended Complaint, and motion for class certification. The Court has reviewed Plaintiffs' amended motion to certify, and finds that it is unnecessary to a

determination of the issue of whether class certification is appropriate in this action.  The amended motion clarifies that Plaintiffs seek class certification against all of the Tosh Defendants and provides additional factual material regarding the relationship between the Tosh Defendants.  As discussed below, this Court has considered all Tosh Defendants as included in Plaintiffs' motion to certify the class.  Thus, the amended motion is not needed to determine the issue at hand.

## II.    <u>Motion to Certify Class</u>

The Court will now reconsider the appropriateness of class certification in this action. Plaintiffs assert that class certification is appropriate under both Rules 23(b)(2) and 23(b)(3).

### a.  Defendants Against Whom Class Certification is Sought and Claims for Which Class Certification is Sought

The Court must first determine the defendant against whom Plaintiffs seek class certification and the claims Plaintiffs seek to certify.  In Plaintiffs' original complaint filed in Marshall Circuit Court, Plaintiffs asserted the following claims: (1) temporary nuisance, (2) permanent nuisance, (3) trespass, (4) negligence, (5) negligence per se, (6) products liability, (7) punitive damages, (8) civil conspiracy, and (9) negligent encouragement.[1]  Plaintiffs also stated as Count VIII that "Plaintiffs are qualified to represent the class of persons who have and are injured by the similar action by Defendant Tosh, so that this claim by these plaintiffs should be certified as a class action under civil rule 23, as to liability."  DN 1-2 at p. 27.  In paragraph 74, under Count VIII, Plaintiffs incorporated all of the previous paragraphs by reference.  In their prayers for relief, Plaintiffs further stated that "Plaintiffs pray to certify this action as a class

---

[1] This Court later dismissed Plaintiffs' claim for negligent encouragement.

action for all property owners and persons injured by the Tosh Hog Barns in Kentucky, pursuant to Civil Rule 23." *Id*. at p. 28.

In Plaintiffs' Second Amended Complaint, Plaintiffs adopted, re-alleged, re-affirmed, and re-iterated all statements and allegations contained in their original complaint and their first amended complaint filed in Marshall Circuit Court prior to removal. DN 201 at p. 1. Plaintiffs further stated that "all of the Defendants, and each of them, acted as the agent, servant, and/or employee of each of the other Defendants." *Id*. at p. 2, ¶ 2. Plaintiffs asserted the same claims as previously asserted in their original complaint, with the addition of a battery claim. Plaintiffs also reasserted their class action count, now correctly labeled as Count X, and incorporated by reference the allegations contained in paragraphs 73-74 of the original complaint. Id. at ¶ 14. There, Plaintiffs stated that "The claim for class action certification contained in this court is against the Defendant Jimmy Tosh. However, it may become necessary to give notice to or join additional defendants." DN 201 at ¶ 15.

Finally, in their motion to certify the class, Plaintiffs stated that they sought class certification against all of the Tosh Defendants, including Tosh Pork, LLC; Tosh Farms General Partnership; Tosh Farms LLC; Bacon By Gosh, Inc.; Pig Palace, LLC; and Shiloh Hills, LLC. With regard to Plaintiffs' reference to specific claims, Plaintiffs stated that they "seek to abate the nuisance they have experienced since Jimmy Tosh began to place his swine in these barns . . . [,] seek injunctive relief . . . [,] seek to prevent further trespass, prevent further injury caused by the negligence of the Tosh Defendants, and . . . to prevent further battery." DN 178 at p. 1-2. In their response to Plaintiffs' motion to certify the class, the Tosh Defendants set forth separate arguments as to why a class should not be certified against Jimmy Tosh and each Tosh entity. DN 191 at p. 5-26.

The Court's principal concern regarding the identification of the defendants against whom Plaintiffs seek class certification is the potential for violating the due process rights of the defendants.  Defendants must be put on notice of the claims against them in order to defend against those claims. Here, the specific defendants included by Plaintiffs in their motion to certify is somewhat unclear.  However, because Plaintiffs' second amended complaint incorporated their previous complaints, and because the Tosh Defendants had notice of the class certification claims against them and the opportunity to respond to those claims, the Court will consider Plaintiffs' motion as it pertains to all of the Tosh Defendants.   Plaintiffs will be allowed to amend their complaint to clarify that they sought class certification against all Tosh Defendants.  Further, because it appears that Plaintiffs' complaints incorporated by reference all claims in their request for class certification except for the battery claim (which was added later and not incorporated into their request for certification in the Second Amended Complaint) and all claims center around the same conduct, the Court will consider all claims except battery as included in Plaintiffs' motion to certify the class.[2]

**b.  Standard for Class Certification**

---

[2] The Court does not construe Plaintiffs' language in their motion to certify the class as explicitly specifying the particular claims they sought to certify.  For example, in their memorandum in support of their motion for class certification, Plaintiffs stated that "if these hog barns . . . are determined to be a temporary nuisance that is abated, they will seek to recover some compensation from the temporary nuisance, but such claims are not part of the class certification."  DN 178-1 at p. 2.  However, Plaintiffs also stated that they were seeking to abate the nuisance.  Plaintiffs later state that they "do not seek class certification to determine compensatory damage claims.  Those will remain subject to individual proof."  However, because liability on those claims must first be determined, the Court does not construe this statement to mean that Plaintiffs were not seeking compensatory damages for their claims as part of the class action.  The Court construes Plaintiffs' statements to mean that Plaintiffs were seeking an injunction under 23(b)(2) based on existence of the nuisance and not compensation under 23(b)(3) based on the existence of the temporary nuisance.

A district court has broad discretion in certifying a class action, but "it must exercise that discretion within the framework of Rule 23." *Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002). "The party seeking the class certification bears the burden of proof." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). First, the moving party must "satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation." *Coleman*, 296 F.3d at 446; *see* Fed. R. Civ. P. 23(a). The district court must conduct "a rigorous analysis" to ensure that "the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *see also Ball v. Union Carbide Corp.*, 385 F.3d 713, 727 (6th Cir. 2004); *In re Am. Med. Sys.*, 75 F.3d at 1078-79. A court may not certify a class that fails to satisfy all four prerequisites. *Ball*, 385 F.3d at 727. Second, in addition to satisfying Rule 23(a)'s prerequisites, the moving party "must demonstrate that the class fits under one of the three subdivisions of Rule 23(b)." *Coleman*, 296 F.3d at 446; Fed. R. Civ. P. 23(b); *see also Ball*, 385 F.3d at 727; *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998) (en banc).

### c. Rule 23(a) Prerequisites to Class Certification

Plaintiffs contend that certification is appropriate under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). To certify these classes, Plaintiffs must first demonstrate that Rule 23(a)'s prerequisites are satisfied. *See In re Am. Med. Sys.*, 75 F.3d at 1079. Rule 23(a) provides as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> > (1) the class is so numerous that joinder of all members is impracticable;
>
> > (2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Olden v. LaFarge*, 383 F.3d 495, 507 (6th Cir. 2004). The Court will separately examine the putative class members surrounding the Ron Davis Hog Barn, and the putative class members surrounding the other Tosh Farms Standard Hog Barns.

       1. *Numerosity*

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys.*, 75 F.3d at 1079 (finding uncontested class estimate of over 150,000 satisfied numerosity requirement); *see also Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005) (affirming district court's determination that proposed class was too speculative to satisfy burden of proving numerosity); *Bacon v. Honda of America Mfg, Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (finding proposed class of 800 current and former employees well beyond point in which joinder would be feasible). "Rather, '[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations.'" *In re Am. Med. Sys.*, 75 F.3d at 1079 (quoting *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980)); *see also Golden*, 404 F.3d at 965; *Bacon*, 370 F.3d at 570. "However, sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *Bacon*, 370 F.3d at 570; *see also In re Am. Med. Sys.*, 75 F.3d at 1079. "[W]hile 'the exact number of class members need not be pleaded or proved, impracticability of joinder must be positively shown, and cannot be speculative.'" *Golden*, 404 F.3d at 965-66 (citation omitted). In addition to "hard numbers" a court may also consider "(1) judicial economy arising from the

avoidance of a multiplicity of actions; (2) the geographic dispersion of class members; (3) the

financial resources of class members; (4) the ability of claimants to institute individual lawsuits;

(5) the amount of each member's individual claim; (6) knowledge of the names and existence of

the potential class members; and (7) whether potential class members have already joined other

actions." *Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 410 (S.D.N.Y. 1998). The Court

will consider each relevant factor in turn.

<u>Ron Davis Hog Barn</u>

First, the Court will consider the number of class members within 1.25 miles of the Ron

Davis Hog Barn. Plaintiffs state that this class would include approximately 450 plaintiffs

within a 1.25 mile radius of the Ron Davis Hog Barn, based on census data. Defendants dispute

this number and state that the Marshall County Geographical Information System and Property

Valuation Administrator reveal no more than 145 residential addresses within 1.25 miles of Ron

Davis's hog barns. The Court does not find Defendant's estimation to be irreconcilable with

Plaintiffs' estimation as 145 residential addresses with an average of 3.1 people per house would

equal 450 people. Courts have not required evidence of exact class size to satisfy the numerosity

requirement. *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005). Thus, a reasonable

estimation is that there are approximately 450 residents, or 145 properties, within 1.25 miles of

the Ron Davis Hog Barns. The Court finds that these numbers are neither insignificant nor

overwhelmingly large as to be prohibitive of joinder. However, the number of potential

plaintiffs does make joinder impractical. Given the particularly contentious nature of this suit,

managing hundreds of named plaintiffs would be difficult under the best of circumstances.

Discovery, even at the reduced rate ordered by this Court, would likely involve thousands of

interrogatories, requests for admission, and requests for production. The combined expenditures

for such discovery could easily exceed the value of the claims.  Thus, this factor weighs heavily in favor of finding that the numerosity requirement is met.

Second, a finding of geographical dispersion among the putative class members will usually support a finding of numerosity because such a finding supports the proposition that joinder is impracticable.  *Gries v. Standard Ready Mix Concrete, LLC*, 252 F.R.D. 479, 486 (N.D. Iowa 2008).  Here, all potential class members reside or own homes within a circle with a 1.25 mile radius, or an area of 4.8 square miles.  Furthermore, all potential class members live in Marshall County and within the Western District of Kentucky.  Therefore, this factor weighs in favor of a finding that the numerosity requirement is not met in this case.

Third, the Court may consider the financial resources of the potential class members with regard to their ability to institute individual lawsuits.  *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).  "One of the basic reasons for promulgating Rule 23 was to provide small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation."  *Primavera Familienstiftung*, 178 F.R.D. at 411.  Therefore, "when the size of each claim is significant, and each proposed class member therefore possesses the ability to assert an individual claim, the goal of obtaining redress can be accomplished without the use of the class action device."  *Id*.  Plaintiff has not presented evidence that the class members are of limited financial means, or are unable to institute individual lawsuits.  Thus, the Court is not willing to conclude that potential class members cannot bring their own lawsuit and assert their own claims.  These factors do not weigh either against or in favor of a finding that the numerosity requirement is met.

Fourth, the Court may also consider the identification, or the knowledge of the names and existence of the potential class members as one factor in the numerosity analysis.  *See Phillips v.*

*Joint Legislative Committee on Performance and Expenditure Review of State of Miss.,* 637 F.2d 1014, 1022 (5th Cir.1981) (noting that joinder impracticable in part because neither party could identify class members), *cert. denied,* 456 U.S. 960 (1982); *Primavera Familienstiftung,* 178 F.R.D. at 410 noting that "[k]nowledge of names and existence of members ... renders joinder practicable."); *see also Spectrum Fin. Cos. v. Marconsult, Inc.,* 608 F.2d 377, 382 (9th Cir.1979) (holding that the district court did not abuse its discretion in ruling that joinder of 92 class members was practicable where the plaintiffs were able to contact all members about joinder), *cert. denied,* 446 U.S. 936 (1980); *Strykers Bay Neighborhood Council, Inc. v. City of New York,* 695 F.Supp. 1531, 1538 (S.D.N.Y.1988) (denying certification as a class of thirty-two families living in a single neighborhood because joinder was not impracticable).

Here, the majority, if not all of the class members, can be readily identified. Defendants have provided, as an exhibit to their response, a list of each address within 1.25 miles of the Ron Davis Hog Barn, provided to them by the Marshall County Property Valuation Administrator.[3] The owners of these properties can be easily identified through county records, and the residents of these properties can likewise be easily identified through contact with the property owners. Thus, this factor weighs in favor of finding that the numerosity requirement has not been met.

Finally, the Court may consider the judicial efficiency of certifying a class versus joinder of the potential class members or trying individual lawsuits. For example, if class members were to file multiple claims in multiple fora, judicial resources would be wasted on duplicative lawsuits. *Gries*, 252 F.R.D. at 487. Generally this inefficiency can be avoided through joinder and intervention of those potential class member who may be interested in joining this suit. *See*

---

[3] It appears that the names of the owners of those properties were redacted, but it is unclear if Defendant redacted them or if the Marshall County PVA did so. Defendant asserts that the PVA "provided a list of the owners of each property." DN 191 at p. 50.

*id.* Although the putative class members can be readily identified and are all located within the Western District of Kentucky, judicial efficiency would be better served by making a determination of liability in one class action instead of in potentially hundreds of separate actions. Thus, this factor weighs in favor of a finding of numerosity.

Upon consideration of all the factors, the Court finds that the class of putative plaintiffs surrounding the Ron Davis Hog Barn meets the numerosity requirement of Rule 23(a). Although the putative class members all reside in a geographically defined and limited area, the sheer number of potential class members leads this Court to determine that joinder would be impractical.

All Hog barns Operating Under a Tosh Farms Standard Swine Service Agreement

Plaintiffs estimate that thousands of potential plaintiffs are available if all Tosh Hog Barns in Western Kentucky are included in the class. For the reasons discussed above, when including all hog barns the numerosity requirement is clearly met.

2.   *Commonality*

Rule 23(a) requires, as a prerequisite for class certification, that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is generally satisfied where there is a "single issue common to all members of the class." *In re Am. Med. Sys.*, 75 F. 3d at 1080 (6th Cir. 1996). Though "there need only be one question common to the class," not every common question will suffice for certification purposes. *Sprague*, 133 F.3d at 397. The resolution of the common question must "advance the litigation." *Id.* Recently, the Supreme Court has stated that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (internal quotations omitted). The claims of the class members must depend upon a

common contention; additionally, that common contention "must be of such a nature that it is capable of class[-]wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*

Here, Plaintiffs assert that common issues of law or fact among the proposed class include the following: "Do the actions of the Defendants (1) create a temporary nuisance; (2) create a permanent nuisance; (3) constitute a trespass on another's property; (4) constitute a negligent breach of duty owed another, to the injury of the other; (5) constitute negligence per se; (6) constitute a civil conspiracy; (7) done in a manner that constitutes wanton, intentional, or grossly negligent behavior; and (8) warrant injunctive relief."  DN 178 at p. 23.

<u>Ron Davis Hog Barn</u>

To support their contention of commonality, Plaintiffs have offered a report prepared by their expert, Dr. Winegar, addressing the area of impact around one of Defendants' facilities, the Ron Davis Hog Farm.  Dr. Winegar's report uses meteorological data, chemical data related to particular chemicals associated with hog farm emissions, and sensory data gathered by independent observers to come to the conclusion that the alleged effects from the Ron Davis Hog Barns extend to the proposed class boundary of 1.25 miles.  According to Plaintiffs, this report offers sufficient evidence to show that all residents and property owners within a 1.25 mile radius of the Ron Davis Hog Barn are similarly affected by that same barn.

The Court finds that the commonality requirement is met among the potential class members surrounding the Ron Davis Hog Barn.  Each potential class members surrounding the Ron Davis Hog Barns asserts a common contention that the operation of the Ron Davis Hog Barns has caused noxious odors and decreased property values.  In comparison, in *Dukes*, the potential class members sought to sue about millions of employment decisions at once.  *Dukes*,

131 S.Ct. at 2552.   There, there was no glue holding the reasons for those employment decisions together.  *Id*.  Here, the potential plaintiffs assert that the Defendants' course of conduct at a single hog barn caused them the same injury.

Additionally, this case is distinguishable from *Dukes* where the plaintiffs' produced insufficient proof of commonality.  In *Dukes*, the plaintiffs' expert merely engaged in a "social framework" analysis to show that the defendant's "corporate culture" made it vulnerable to gender bias; however, he could not calculate whether .5 percent or 95 percent of the defendant's employment decisions were determined by stereo-typed thinking. *Id*. at 2553.  The Supreme Court noted that the expert's testimony did nothing to advance the plaintiffs' case.  *Id*. at 2554. Here, in comparison, Plaintiffs have produced Dr. Winegar's expert report to show that the Ron Davis Hog Barn is the source of the noxious odor for class members surrounding 1.25 miles of the barn.  Although Defendants take issue with some of Dr. Winegar's methods, the Court finds Dr. Winegar's report to be sufficient to meet the commonality requirement.  His report outlines his method for objectively measuring the presence of odors and explains how the sensory data (from odor logs kept by Plaintiffs) correlates with the objective data.  Dr. Winegar's report also uses wind speed and wind direction data to indicate how the odor plumes disperse from their source.  Importantly, Dr. Winegar provides citations supporting his methods of using the presence of surrogate chemicals and certain volatile organic compounds to detect odors produced by hog barns.[4]  Finally, the plaintiffs' own sensory observations provide significant evidence that they have actually experienced a distinct odor from the Ron Davis Hog Barn.

---

[4] One of Defendants' principal arguments against the sufficiency of Dr. Winegar's report is that several ammonia and hydrogen sulfide readings were below the odor threshold levels for those chemicals.  However, Dr. Winegar states that the presence of hydrogen sulfide simply indicates the presence of other chemical species and odor from swine facilities, based on an established relationship between hydrogen sulfide and swine odor.  Dr. Winegar cites to a study which

While the frequency and intensity of the effects suffered by those within the proposed class may differ, there are common questions of law and fact capable of class-wide resolution in regards to liability.  For example, Plaintiffs have asserted a claim against Defendants for negligence per se.  To support this claim, Plaintiffs would have to show that Defendants violated a statute, that they are within a class of persons for whose benefit the statute was enacted, and that the harm to the plaintiffs is the type of harm the statute was designed to prevent.  These are questions that can be determined on a class-wide basis.  Additionally, Plaintiffs have asserted a products liability claim against Defendant.  To support this claim, Plaintiffs would have to show that the Ron Davis Hog Barn is a defective product.  This question is also capable of determination on a class-wide basis.  Accordingly, the Court finds that there is commonality between Plaintiffs situated around the Ron Davis Hog Barn.

All Hog Barns Operating Under a Tosh Farms Swine Service Agreement

To show commonality as to the other hog barns, Plaintiffs' expert generalized his study of the Ron Davis Hog Barn to the areas surrounding the other Tosh Farms Standard Hog Barns

---

confirms that there is a poor correlation between odor concentration and the concentration of hydrogen sulfide in emissions plumes from swine production facilities, but notes that VOC odorants may be responsible for a significant proportion of the odor present the emission plumes. J.A. Zahn, et al., "Correlation of Human Olfactory Responses to Airborne Concentrations of Malodorous Volatile Organic Compounds Emitted from Swine Effluent," 30 J. Environ. Quality. 624-634 (2001).  That study goes on to conclude that "direct chemical analysis of VOCs present in air samples from animal production environments represents an alternative approach to olfactory measurements . . . as a screening method to identify swine production sites that represent a potential nuisance concern."

Dr. Winegar also states and cites to another study which confirms that human assessment of odors emanating from swine facilities can be strong despite the vast majority of compounds being present at concentrations below published odor and threshold levels.  This study stated that the "intensity of the odorous emissions from swine facilities must result not only from individual compounds that are present at concentrations above their odor thresholds, but from the aggregate effect of hundreds of odorous chemicals present at subthreshold concentrations."  Schiffman, Susan S., et al., "Quantification of Odors and Odorants from Swine Operations in North Carolina," 108 Agricultural and Forest Meteorology 213-240 (2001).

in Marshall, Hickman, Fulton, and Carlisle Counties.  He did this by comparing meteorological data of Benton, Kentucky (in Marshall County) and Fulton, Kentucky (in Fulton County). Plaintiffs' expert concluded that because the weather conditions in the two locations and the barn operations are largely similar, the areas surrounding the other hog barns would suffer a similar impact.  However, no scientific study has been conducted with respect to these other Tosh Standard Hog Barns.

The Court finds Dr. Winegar's data extrapolation to be insufficient to show commonality among a class that includes residents and homeowners surrounding both the Ron Davis Hog Barns and the other hog barns.  Dr. Winegar has done only a basic comparison of the weather and satellite images at two location, and has done nothing to verify that what appears to be similar weather results in similar scent conditions at all Tosh Standard Hog Barns. This evidence is insufficient to show that all potential class members Plaintiffs seek to include in the proposed class have suffered the same injury. Accordingly, the commonality requirement is not met with respect to the other Tosh Standard Hog Barns.

Having excluded potential class members who reside around the other Tosh Farm Standard Hog Barns from the proposed class on the basis of lack of commonality, the Court will continue its analysis only as it relates to the potential for class certification for residents and homeowners surrounding the Ron Davis Hog Barn.

3.  *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality prerequisite "determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the

challenged conduct." *Sprague*, 133 F.3d at 399 (citing *Am. Med. Sys.*, 75 F.3d at 1082). "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *Am. Med. Sys.*, 75 F.3d at 1082. "[F]or the district court to conclude that the typicality requirement is satisfied, 'a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law.'" *Id.* (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 n.31 (6th Cir. 1976)). On the other hand, a claim, if proven, is not typical if it would only prove the named plaintiff's claim. *See Sprague*, 133 F.3d at 399.

The claims of the named Plaintiffs who reside or own property within 1.25 miles of the Ron Davis Hog Barn are typical of claims that might be brought by potential plaintiffs within that same area. Similar to the commonality requirement, all Plaintiffs within the area of the Ron Davis Hog Barn have allegedly suffered similar effects, albeit with varying frequency and degree, as a result of the construction and operation of the Ron Davis Hog Barn. It is this same course of conduct that gives rise to the claims of all other class members. Additionally, for many of the alleged legal theories, the claims of all class members are the same. Accordingly, the requirement of typicality is satisfied with respect to the Ron Davis Hog Barns.

### 4. *Adequacy of Representation*

The final prerequisite Plaintiffs must satisfy is that "the representative parties will fairly and adequately protect the interests of the class." Rule 23(a)(4). The Sixth Circuit has held that "[t]here are two criteria for determining whether the representation of the class will be adequate: (1) The representative must have common interests with unnamed members of the class, and (2)

it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 524-25.

The various named Plaintiffs in the vicinity of the Ron Davis Hog Barn have common interests with others in the vicinity of the barn and appear to be willing to vigorously prosecute the interests of the class. Furthermore, Defendant does not offer any substantial argument that Plaintiffs' counsel are not qualified or will not adequately represent the class. Accordingly, the fourth requirement of Rule 23(a) is met as to the Ron Davis Hog Barns.

### d. Rule 23(b) Requirements

In addition to meeting the requirements of Rule 23(a), parties seeking class certification must show that the purported class meets at least one of the requirements set forth in Rule 23(b). Fed. R. Civ. P. 23(b). Here, Plaintiffs have moved to certify their class under both Rule 23(b)(2) and 23(b)(3). Because the Court has determined that only a class comprised of potential plaintiffs surrounding the Ron Davis Hog Barn has met the 23(a) prerequisites, the Court's discussion of the 23(b) requirements will be limited to that class.

#### 1. *Rule 23(b)(2) Certification*

Rule 23(b)(2) provides that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ." Fed. R. Civ. Proc. 23(b)(2). A 23(b)(2) class is only appropriate if the requests for injunctive relief predominate over the requests for damages. As the Fifth Circuit has noted:

> monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief. By incidental, we mean damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief . . . such damages should at least be capable of computation by means of objective standards and not dependent in any

significant way on the intangible, subjective differences of each class member's circumstances.

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998)(internal citations omitted). Generally, a 23(b)(2) class should be "homogenous and therefore cohesive." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.142 (2004). "This presumption can be destroyed by showing individualized issues as to liability or remedy." *Id.*

While the Plaintiffs claim to disavow any damages for the current class certification motion, their actions indicate otherwise. They have included claims that do not lend themselves to injunctive relief, included Plaintiffs that are not eligible and would not benefit from injunctive relief, and suggested that damage claims should be adjudicated following a liability determination.[5] Any damage calculation would necessarily involve individualized determinations, as the Plaintiffs' own expert has stated that the frequency and intensity varies by direction. Additionally, the amount of each class member's damages would be dependent on intangible, subjective differences of each class member's circumstances as the alleged odor has affected each potential plaintiff differently.

Plaintiffs have also specifically stated that they wish to pursue punitive damages within their class action claim. Since Plaintiffs have claimed both compensatory and punitive damages for many of their claims, the claim for damages overshadow the claim for injunctive relief. Accordingly, a Rule 23(b)(2) class is inappropriate. *Accord Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) (Cannot certify a 23(b)(2) class unless the monetary relief is incidental to the injunctive or declaratory relief).

2. *Rule 23(b)(3) Certification*

---

[5] Plaintiffs have included named class members who no longer reside in the area of the hog barn, and who therefore would receive no benefit from the issuance of an injunction. Accordingly, their participation must be indicative of their desire to receive monetary compensation.

A Rule 23(b)(3) class is appropriate only if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Accordingly, Plaintiffs must show that (1) common issues of law and fact predominate, and (2) a class action is superior to other methods of adjudication.

Predominance

The Court finds that common issues of fact and law predominate over questions affecting only individual members.  "Predominance is usually decided on the question of liability, and if the liability issue is common to the class, common issues are held to predominate over individual questions."  *In re Revco Securities Litigation*, 142 F.R.D. 659, 662 (N.D. Ohio 1992) (internal quotations omitted).

Plaintiffs have asserted claims against Defendants for nuisance, trespass, negligence, products liability, punitive damages, and civil conspiracy.  Plaintiffs contend that the requirements of 23(b)(3) are met because Defendants' liability can be determined on a class-wide basis.  Defendants contend that the element of causation for Plaintiffs' claims cannot be established on a class-wide basis and instead must be determined on an individual basis, and so common questions of law or fact will not predominate over individual issues.  This Court disagrees.

This case differs from other cases denying class certification on the basis of insufficient evidence.  In *Brockman v. Burton Brands*, 2007 WL 4162920 (W.D. Ky. 2007), the plaintiffs surrounding the defendant's distillery sought monetary and injunctive relief for damage allegedly resulting from fallout and noxious odors emitted by the distillery.  There, the plaintiff's expert

did not provide evidence that the cause of the plaintiffs' damages could be determined on a class-wide basis – there was no evidence linking the plaintiffs' harm to the defendant's distillery, no evidence that the airborne contaminants spread in a uniform fashion in all directions from Defendants' facility for a distance of up to two miles, no test results for any substances the plaintiffs alleged had fallen on their property, and no analysis of where the emissions of the defendant's distillery spread once they left the defendant's smokestack. *Id*. at *4. The district court therefore denied the plaintiffs' motion to certify a class due to a lack of predominance. In contrast, Dr. Winegar's report and the odor logs kept by the plaintiffs provides such evidence that was notably missing in *Brockman*.

Likewise, this case is distinguishable from *Burkhead v. Louisville Gas & Electric Co*., 250 F.R.D. 287 (W.D. Ky. 2008), where the district court denied the plaintiffs' motion to certify a class based on the lack of predominance. In *Burkhead*, the plaintiffs failed to put forth any evidence that the cause of the entire class's damages could be determined in a single proceeding. *Id*. at 299. The plaintiffs' evidence was limited to complaints of residents within a single, geographically contained area about various substances and odors on their property and evidence of emissions from the defendant's facility. *Id*. at 292. Notably, the plaintiffs did not present evidence that the substances or odor were attributable to the defendant or that the airborne contaminants might have spread in all directions from the defendant's facility. *Id*. at 293. In fact, the plaintiffs in *Burkhead* did not provide an expert report at all. *Id*.

In contrast with *Brockman and Burkhead*, this case is more similar to *Boggs v. Divested Atomic Corporation*, 141 F.R.D. 58 (S.D. Ohio 1991). In *Boggs*, the district court certified a class of residents surrounding a radioactive materials plant to recover for emotional distress and reduced property values. There, the plaintiffs supported their proposed class within expert

testimony that the released radioactive materials spread to at least a six-mile radius.  In that case, the court noted that "differences in the situation of each plaintiff or class member do not necessarily defeat typicality: 'the harm suffered by the named plaintiffs may differ in degree from that suffered by other members of the class so long as the harm suffered is of the same type.'"  *Id*. at 65 (quoting *In re Asbestos School Litigation*, 104 F.R.D. 422, 430 (E.D. Pa. 1984)).  With regards to the predominance requirement, the court ultimately found that "[c]ommon issues of liability, causation, and remedies not only predominate but overwhelm individualized issues."  *Id*. at 67.

Here, Plaintiffs have produced evidence that the Ron Davis Hog Barn is the source of the alleged "recurring intolerable noxious odor" that is the basis of the complaint and that the odor is present throughout the entire class area.  Dr. Winegar's report states that the odor from swine facilities is distinguishable from other odors produced by livestock operations.  Dr. Winegar has also identified the presence of VOCs, which are linked to odors from swine facilities, throughout the geographical class boundary.  Additionally, Dr. Winegar's meteorology and wind study provides evidence that the odorants from the Ron Davis Hog Barn disperse in a somewhat uniform fashion, albeit at different times depending on the wind speed and wind direction. While it is true that some putative class members may experience varying degrees of odor intensity and frequency, these differences go to an individualized damages determination.

The only remaining issue remaining, then, is whether the individualized damage claims defeat the Rule 23(b)(3) class.  In *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, the Sixth Circuit addressed this very issue.  Recognizing that there is a "need for a more efficient method of disposing of a large number of lawsuits arising out of . . . a single course of conduct," the Sixth Circuit stated that "no matter how individualized the issue of damages may be, these issues

may be reserved for individual treatment with the question of liability tried as a class action." *Id.* at 1197. "Where the defendant's liability can be determined on a class-wide basis because the cause of the [liability] is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy." *Id.* Allowing the liability portion to proceed as a class action will help avoid "duplication of judicial effort" and prevent "separate actions from reaching inconsistent results with similar, if not identical, facts." If class liability is established, "individual members of the class still will be required to submit evidence concerning their particularized damage claims in subsequent proceedings." *Id.*

Here, following a potential Plaintiffs' verdict in the liability phase of the class-action trial, this Court would encourage the parties to engage in informed settlement negotiations. Barring that, this Court would encourage both parties to submit to a magistrate or special master for damage determinations. If that also fails, this Court would begin conducting individual jury trials on the damage claims until the parties have enough information to finalize settlement negotiations. 3 Newberg on Class Actions § 9.53 *et seq.* (4th ed. 2011). The Court believes that if counsel will work with the Court, the parties can agree on a plan to streamline any damage trial should Plaintiff's prevail on the issue of liability. For instance, the Court may grant the parties a few days to craft a settlement after a verdict finding Defendants liable. If settlement is not achieved the parties can agree to place the plaintiffs in groups of plaintiffs with similar damages and perhaps try representative cases with others being bound. These are only suggestions, but the Court believes necessity will cause the parties to find an amenable procedure. Otherwise the Court could hold individual trials with the same jury over the course of several weeks. Accordingly, the Court finds that common issues of fact and law predominate over questions affecting only individual members.

Superiority

The superiority prong of Rule 23(b)(3) certification addresses "the relative advantages of an class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay v. Humana, Inc*., 382 F.3d 1241, 1269 (11th Cir. 2004). "[T]he predominance analysis . . . has a tremendous impact on the superiority analysis . . . [because] the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Id*. The Rule directs the Court to consider the following pertinent factors:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and]
>
> (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

Balancing the pertinent factors, the Court believes that a class action is the superior method to fairly and efficiently adjudicate this controversy. First, the Court can find no reason for the members of the class would have an interest in individually controlling the prosecution of their claims in separate action. Second, the Court is not aware of the presence of any other litigations concerning the controversy in this action. Third, if Plaintiffs' claims were tried separately, the amount of repetition would be manifestly unjustified. To the extent that each Plaintiff's claims would require proof concerning the design of the hog barns, the operation of the hog barns, the cause of the odor emissions, and the generalized impact of the hog barn on real property values, that proof would be nearly identical in each case. Importantly, if Plaintiffs were

to bring individual actions, an expert such as Dr. Winegar would be required in each action.  This alone may prove prohibitive to those who may seek to proceed on an individual basis.  Allowing this action to proceed as a class action would be more efficient, as the parties would not be forced to present the same evidence at multiple trials.  Finally, although there are inherent difficulties in the management of a class action, they are not insurmountable and do not serve to make a class action inappropriate.

Having found that Plaintiffs have met the requirements of Rule 23(a) and Rule 23(b)(3), this Court finds that class certification is appropriate with respect to the Ron Davis Hog Barn. The class is certified against the Tosh Defendants for the following claims: (1) temporary nuisance, (2) permanent nuisance, (3) trespass, (4) negligence, (5) negligence per se, (6) products liability, (7) punitive damages, and (8) civil conspiracy.

### e.   Class Definition

Having determined that a class is properly certifiable as to the area surrounding the Ron Davis Hog Barns, the Court must now address the proposed class definition.  "Although not specifically mentioned in [Rule 23], the definition of the class is an essential prerequisite to maintaining a class action."  *Brockman v. Barton Brands*, 2007 WL 4162920 at *2 (W.D. Ky. 2007)(internal citations omitted).  The class description must be "sufficiently definite that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.*  The plaintiffs have proposed the following definition:

> All residents and property owners within a 1.25 mile radius of the Ron Davis Tosh Farms Standard Hog Barn subject to the Tosh Swine Services Agreement and all residents and property owners within such radius of all other Tosh Farms Standard Hog Barn subject to the Tosh Swine Services Agreement in Marshall, Hickman, Fulton, and Carlisle Counties, Kentucky as identified in the December 12, 2010 Report by Dr. Eric Wineger, subject to the provisions to opt out of such class and opt into such class as the Court may approve, and excluding the

Defendants and their agents, employees, and related legal entities, in Marshall, Hickman, Fulton, and Carlisle Counties, in Kentucky.

As discussed above, class certification is only appropriate for the Ron Davis Hog Barn.

Therefore, the language relating to other barns must be struck from the definition. Additionally, the language to opt in must be struck. Plaintiffs' expert has prepared a report stating that the barn produces an effect that extends 1.25 miles from the Ron Davis hog Barn in all directions. Allowing other plaintiffs outside of this delineated area to opt in would defeat the common issues shared in liability and subject to proof by expert testimony and would result in individualized liability testimony. Accordingly, no such plaintiffs are appropriate. While Defendants objected to the opt out language as well, since this Court only certified the action under Rule 23(b)(3) the opt out provision is required by due process and the objection to the language allowing for opt out is moot. The remaining definition is sufficiently definite to determine whether a particular individual is a member.

Finally, as pointed out by Defendants, some named Plaintiffs are not currently living within the defined area. Plaintiffs did not include any language in the proposed class definition referring to former residents. However, in its Memorandum Opinion and Order dated May 3, 2011, this Court stated that "[i]f class certification is granted, this Court will allow Plaintiffs to file an amended complaint that states the class definition certified by this Court." DN 199. Accordingly, at this time, the Court will assume that the class action claims are being asserted on behalf of former as well as current residents and property owners. Per the above discussion, the following class shall be certified:

All current and former residents and property owners within a 1.25 mile radius of the Ron Davis Tosh Farms Standard Hog Barn subject to the Tosh Swine Services Agreement and subject to the provisions to opt out of the class, and excluding the Defendants and their agents, employees, and related legal entities.

Plaintiffs will be allowed to amend their complaint to state this class definition.

### III. Motions to Vacate Trial Date

The Tosh Defendants and the Farmer Defendants have filed separate motions to vacate or to continue the current scheduling order in this case (DN 285 and DN 286). Trial in this matter is currently scheduled for April 9, 2012. Because this leave the parties with insufficient time in which to brief dispositive motions or *Daubert* motions, and because there is insufficient time in which to provide class notice, this trial date will be continued.

**CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED as follows:

(1)  Plaintiffs' motion for leave to amend their motion to certify the class (DN 281) is DENIED.

(2) Plaintiffs' motion to certify the class (DN 178) is GRANTED.

(3) Defendants' motions to vacate the trial date and to continue the current scheduling order (DN 285 and DN 286) are GRANTED.

(4) This matter is set for a telephonic scheduling conference on March 8, 2012 at 12:00 p.m CST.