UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
Case No. 5:09-CV-121-R

TERRY POWELL, *et al.*                                    PLAINTIFFS

v.

JIMMY TOSH, *et al.*                                      DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the Court upon the following motions:

(1)     Defendant Eric Howell's motion for summary judgment, (DN
        340), to which Plaintiffs have responded, (DN 376), and the
        Davis/Howell Defendants[1] have collectively replied, (DN 433).

(2)     Defendants Ron and Heather Davis's motion for summary
        judgment, (DN 343), to which Plaintiffs have responded, (DN
        378), and the Davises have replied, (DN 445).

(3)     The Davis/Howell Defendants' joint motion for summary
        judgment on Plaintiffs' water contamination claims, (DN 344), to
        which Plaintiffs have responded, (DN 376), and the Davis/Howell
        Defendants have jointly replied, (DN 433).

(4)     The Tosh Defendants'[2] partial motion for summary judgment on
        Plaintiffs' negligence *per se* claims, (DN 347), to which both

---

[1] The "Davis/Howell Defendants" include Eric Howell, Ron Davis, and Heather Davis.  Although these Defendants variously and inconsistently (even by themselves) are referred to elsewhere in this matter as: the "Farmer Defendants," the "Defendant Farmers," the "Howell/Davis Defendants," the "Producer Defendants," the "Davis and Howell Defendants," and the "Davis/Howell Defendants," the Court has adopted the label most consistently used by the Davis/Howell Defendants in the motions this Opinion addresses.

[2] The "Tosh Defendants" include Jimmy Tosh; Tosh Farms, LLC; Tosh Farms General Partnership; Pig Palace, LLC; Shiloh Hills, LLC; Tosh Pork, LLC; and Bacon By Gosh, Inc.

Plaintiffs, (DN 379), and the Davis/Howell Defendants, (DN 396), have responded and the Tosh Defendants have replied, (DN 435).

(5)     The Tosh Defendants' partial motion for summary judgment on Plaintiffs' product liability claims, (DN 353), to which both Plaintiffs, (DN 380), and the Davis/Howell Defendants, (DN 398), have responded and the Tosh Defendants have replied, (DN 434).

(6)     The Tosh Defendants' partial motion for summary judgment on Plaintiffs' civil conspiracy claims, (DN 355), to which both Plaintiffs, (DN 382), and the Davis/Howell Defendants, (DN 392), have responded.

(7)     The Tosh Defendants' partial motion for summary judgment on Plaintiffs' punitive damages claims, (DN 356), to which both Plaintiffs, (DN 383), and the Davis/Howell Defendants, (DN 399), have responded and the Tosh Defendants have replied, (DN 436).

(8)     The Tosh Defendants' partial motion for summary judgment on Plaintiffs' battery claims, (DN 358), to which both Plaintiffs, (DN 384), and the Davis/Howell Defendants, (DN 388), have responded and the Tosh Defendants have replied, (DN 447).

(9)     The Tosh Defendants' partial motion for summary judgment on Plaintiffs' trespass claims, (DN 359), to which both Plaintiffs, (DN 386), and the Davis/Howell Defendants, (DN 403), have responded and the Tosh Defendants have replied, (DN 448).

(10)    The Tosh Defendants' partial motion for summary judgment on Plaintiffs' nuisance claims, (DN 360), to which both Plaintiffs, (DN 387), and the Davis/Howell Defendants, (DN 397), have responded and the Tosh Defendants have replied, (DN 450).

(11)   The Tosh Defendants' partial motion for summary judgment on vicarious liability, (DN 361), to which both Plaintiffs, (DN 426), and the Davis/Howell Defendants, (DN 400), have responded and the Tosh Defendants have replied, (DN 446).

(12)   The Plaintiffs' partial motion for summary judgment, (DN 363), to which both the Tosh Defendants, (DN 410), and the Davis/Howell Defendants, (DN 385), have responded and Plaintiffs have replied, (DN 440 & 441).

(13)   The Plaintiffs' motion for a permanent injunction, (DN 365), to which both the Tosh Defendants, (DN 409), and the Davis/Howell Defendants, (DN 375), have responded and the Plaintiffs have replied, (DN 438).

(14)   The Tosh Defendants' partial motion for summary judgment on Plaintiffs' negligence claims, (DN 366), to which both the Plaintiffs, (DN 391), and the Davis/Howell Defendants, (DN 395), have responded and the Tosh Defendants have replied, (DN 449).

(15)   Plaintiffs' Motion to Amend/Correct the Scheduling Order, (DN 407), to which Defendants collectively have responded, (DN 455), and Plaintiffs have replied, (DN 465).

These matters are now fully briefed and ripe for adjudication.

## BACKGROUND

In May 2009, Plaintiffs, who are residents and property owners in Marshall County, Kentucky, filed suit against the Defendants. Defendants Eric Howell, Ron Davis, and Heather Howell Davis (collectively the "Davis/Howell Defendants") are Marshall County residents and property owners who have constructed swine barns on their properties. Each named Plaintiff is

within a one-mile radius of one of these swine barns. Through a variety of legal theories, Plaintiffs allege that these barns are defectively constructed products that create a nuisance and cause them injury.

Defendant Eric Howell operates three barns on Wilkins Road, with an aggregate capacity to house approximately 1800 pigs. The barns, built in 1973, 1991, and 1992, have partially slatted floors with 5-feet-deep pits. Defendant Ron Davis operates two barns on Brewers Highway,[3] which began operations in December 2006 and May 2007, respectively. Defendant Heather Howell Davis has constructed two barns on her property on Lela Green Road. These barns became operational in 2007 and 2009.  The Davises' four barns were built according to a standard industry "deep-pit" design required under a Swine Service Agreement with Tosh Farms General Partnership. The barns utilize 8-feet-deep concrete pits to store manure, which enters the pits after being pushed through slatted floors beneath the pig pens. The barns have the capacity to hold roughly 13 to 14 months' worth of accumulated waste, which the Davis/Howell Defendants will from time to time pump from the pits on row crop land owned by, or available to, them.

Plaintiffs have also brought claims against Jimmy Tosh; Tosh Farms General Partnership;[4] Tosh Farms, LLC;[5] Shiloh Hills, LLC;[6] Pig Palace, LLC;[7] Tosh Pork, LLC;[8] and Bacon by Gosh, Inc.,[9] referred to collectively in this opinion as the "Tosh Defendants." Jimmy

---

[3] The Brewers Highway barns have been otherwise referred to in this matter as the "Ron Davis barns on Brewers Highway" and the "Porky and Petunia site on Route 402."
[4] Referred to hereinafter as "Tosh Farms GP."
[5] Referred to hereinafter as "Tosh Farms."
[6] Referred to hereinafter as "Shiloh Hills."
[7] Referred to hereinafter as "Pig Palace." This limited liability company is not to be confused with the construction division of Tosh Farms GP, also called Pig Palace, which was responsible for constructing the Davises' four hog barns. Any reference in this opinion to "Pig Palace" is meant to refer to the limited liability company and not the construction division of the general partnership.
[8] Referred to hereinafter as "Tosh Pork."
[9] Referred to hereinafter as "Bacon By Gosh."

Tosh and his family own several affiliated companies that are engaged in commercial swine farming in both Kentucky and Tennessee. Each of these companies is engaged in a particular aspect of the swine-farming industry. For example, Bacon By Gosh is engaged in the transportation of swine and Shiloh Hills makes pre-cast concrete components for agricultural use.

Several years ago, Tosh Farms GP sought to expand its business in Western Kentucky and began seeking additional growers, including the Davis/Howell Defendants. There has been opposition to this expansion, including the filing of formal complaints with Kentucky state agencies. For example, to operate a hog barn, the owner or operator must be issued certain permits from the Kentucky Environmental and Public Protection Cabinet ("Cabinet") and the Kentucky Division of Water ("Division"). Several individuals have opposed issuing permits to hog farm owners and operators by filing objections during the public comment period. Despite these objections, the necessary permits were issued and several hog barns are now in operation.

Although Defendant Eric Howell has previously raised hogs under contract with Tosh Farms GP, his current operations are not affiliated with any of the Tosh entities. However, Ron and Heather Davis began raising hogs pursuant to a Tosh Swine Services Agreement (SSA) in 2006, and that relationship continues today. Tosh Farms GP was party to the SSAs until 2007, at which point the partnership shifted its focus to row-cropping operations and assigned all its SSAs to Tosh Pork. Since 2007, Tosh Pork has entered into all subsequent SSAs and owns the hogs raised by the Davis/Howell Defendants under those agreements.

All Plaintiffs allege they began suffering from "recurring intolerable noxious odors emanating from the Defendants' swine waste facilities constituting a nuisance and decreasing the value of [their] residence and real property" soon after the second Brewers Highway barn began

5

operations in the spring of 2007. The majority of Plaintiffs documented their experiences with the odors in odor logs, which they kept until the discovery deadline in this case. Plaintiffs assert they did not experience any odor events until Ron Davis built the Brewers Highway barns. Subsequent to the barns' construction, Plaintiffs frequently began to smell hog odors at their homes.  Plaintiffs have described the hog odors as sickening, gagging and nauseating, pungent and terrible, overwhelming, oppressive, "knock you in the face bad," "the raunchiest smell I ever smelled," a rotting cow carcass, and "feces and raw urine." As a result of these odors, Plaintiffs have variously testified that they no longer host friends and family members at their homes, their children are unable to play outside as frequently, they do not use their homes' swimming pools or patios, and they are unable to open their windows.

Additionally, some Plaintiffs allege other injuries. For example, certain Plaintiffs allege that the injection method utilized by the Davis/Howell Defendants to fertilize their land has and will constitute an additional recurring nuisance and further injure them. Plaintiffs Rhonda Free, Brenda Jordan, and Michael and Kandis Jordan allege water contamination. Plaintiff Terry Powell alleges the odors have caused physical symptoms such as congestion, a runny nose, and vomiting.

Plaintiffs filed their original complaint in Marshall Circuit Court on May 29, 2009, against the Davis/Howell Defendants and the Tosh Defendants. Plaintiffs currently assert claims against all Defendants for temporary nuisance, permanent nuisance, trespass, negligence, negligence *per se*, product liability, battery, and civil conspiracy. This Court originally granted in part Plaintiffs' motion for class certification on October 13, 2011. The Court subsequently reconsidered class certification and, on March 2, 2012, ultimately certified a class for all current and former residents and property owners within a 1.25-mile radius of Defendant Ron Davis's

barns on Brewers Highway in Marshall County, Kentucky. (DN 245.) Plaintiffs seek both injunctive relief and monetary damages for the diminution in the fair market value of their real property, personal injuries, pain and suffering, and punitive damages.

All parties have filed numerous motions seeking summary judgment on various claims and the exclusion of key expert witnesses. The parties have filed their responses and replies to these motions. A separate Opinion addresses the parties' expert motions.

## STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

### I.   <u>Liability of Tosh Defendants</u>

"Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 50 (Ky. 2003) (quoting *CSX Transp., Inc. v. First Nat'l Bank of Grayson*, 14 S.W.3d 563, 566 (Ky. Ct. App. 1999)). "The question of agency always concerns the nature of the relationship at the time the injury occurred." *Sam Horne Motor & Implement Co. v. Gregg*, 279 S.W.2d 755, 756 (Ky. 1955). "As a general rule, an employer is not liable for the torts of an independent contractor in the performance of his job." *Miles Farm Supply v. Ellis*, 878 S.W.2d 803, 804 (Ky. Ct. App. 1994).

Courts may consider a number of factors in making this determination, including: the extent of control the master exercises over the details of the work; whether the one employed is engaged in a distinct occupation or business;  whether the work is usually done under the direction of the employer or by a specialist without supervision; the skill required in the particular occupation; whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; the length of time for which the person is employed; the method of payment, whether by the time or by the job; whether the work is a part of the regular business of the employer; and whether the parties believe they are creating the relationship of master and servant. *Gregg*, 279 S.W.2d at 756 (citing Restatement (First) of Agency § 220(2)). "[T]he right to control is considered the most critical element in determining whether an agency relationship exists." *Phelps*, 103 S.W.3d at 50.

"The burden of proving agency is on the party alleging its existence." *Wright v. Sullivan Payne Co.*, 839 S.W.2d 250, 253 (Ky. 1992). "Agency is a legal conclusion to be reached only

after analyzing the relevant facts. . . ." *CSX Transp., Inc.*, 14 S.W.3d at 566 (quoting *Thomas v. Hodge*, 897 F. Supp. 980, 982 (W.D. Ky. 1995)). "Where the facts are in dispute and the evidence is contradictory or conflicting, the question of agency, like other questions of fact, is to be determined by a jury. However, where the facts are undisputed, the question becomes one of law for the court." *Id.* (quoting *Wolford v. Scott Nickels Bus. Co.*, 257 S.W.2d 594, 595 (Ky. 1953)). Here, the parties do not appear to dispute the facts material to determining whether an agency relationship exists. Rather, the Tosh Defendants collectively argue that under those facts, no Tosh Defendant should be held liable for the Davises' operations at the Brewers Highway barns.

Though the question of agency is a close one, after a full review of the record, the Court finds that the Davises may be considered agents of certain Tosh Defendants. The parties' relationship is governed by the SSAs between the Davises and Tosh Farms GP and, subsequently, Tosh Pork.[10] As the Tosh Defendants point out, the SSAs specifically state that the Davises (called "Growers" in the SSAs) are independent contractors. (*See, e.g.,* April 2009 SSA, DN 355-13 ("2009 SSA"), ¶ 18.5 ("[N]othing in this Agreement shall have the effect of making Grower . . . an agent, servant, employee, or a partner of Tosh . . . .")) Although the parties' perception of whether they are creating an employer-employee relationship is one factor for this Court to consider, it is not controlling. *Gregg*, 279 S.W.2d at 758. Nonetheless, this factor weighs in favor of finding that Ron and Heather Davis are independent contractors. Also weighing in favor of finding an independent contractor relationship is the length of time the Davises were to be employed. The contract is not terminable at will; rather, the SSA outlines specific limited situations in which the parties may terminate the agreement before its natural

---

[10] For purposes of this Section, the Court will refer to the two Tosh entities party to the SSAs, Tosh Farms GP and Tosh Pork, as "the Tosh parties."

expiration. (*See, e.g.*, 2009 SSA ¶ ¶ 17.1-17.2.) "[T]he right of the employer to terminate the employment at any time is incompatible with the independent contractor relationship." *Golden Rule Publishers v. Edwards*, 2004 WL 2315272 (Ky. Ct. App. Oct. 15, 2004) (citing *Bowen v. Gradison Constr. Co.,* 32 S.W.2d 1014 (Ky. 1930)). Thus, this factor suggests an independent contractor relationship. Finally, the Davises' sole occupation is not providing hog-raising services for the Tosh parties; they also are engaged in cultivating crops such as corn, soybeans, and wheat. (*See* R. Davis Dep. 22:1-23:25, Oct. 26, 2010, DN 343-5.) Although it could be argued that both raising crops and raising hogs fall under the broad "occupation or business" of farming, the Court finds the two activities sufficiently distinct to weigh in favor of independent contractor status.

However, weighing these factors against the remaining facts in the record, the Court still finds it appropriate to consider the Tosh parties employers of the Davises. First, although the SSA indicates that the Davises shall "provide all equipment, building spaces, labor, and other Facilities necessary" to perform the hog-raising services, the Tosh parties provide or control many of the supplies integral to hog raising. (2009 SSA ¶ 9.2.) For example, Tosh provides feed, propane, and medicine for use on the pigs, which at all times belong to Tosh. (2009 SSA ¶¶ 1.13, 7.2.) As discussed below, the agreement required the Davises to construct hog barns in compliance with an industry standard design provided by Tosh and forbade them from modifying the design without prior approval from the Tosh parties. Thus, the Tosh parties supplied or controlled many of the "necessary tools" for the hog-raising business to survive, which supports an agency relationship. *Cf. Edwards*, 2004 WL 2315272, at *4. Second, the Davises were not paid by the job, but instead paid a yearly flat "services fee" in twelve monthly installments.

10

Third, and most convincingly, through the SSAs, the Tosh parties exercise a great deal of control over crucial aspects of the hog-raising operation. The Tosh Defendants note that the Davises retain ownership of the hog manure and the SSAs do not dictate how the Davises manage or use such manure. The Tosh Defendants contend this indicates that the Tosh parties do not exercise control over the specific aspect of the hog-raising business, *i.e.*, the manure, alleged to have harmed plaintiffs. The Court does not view the cause of Plaintiffs' alleged harms so narrowly.

The record shows the Tosh parties exercise an extensive degree of control over material details of the Davises' hog-raising work. As stated above, the Tosh parties provide certain feed and medicines to be strictly administered according to specified guidelines. The SSAs required the Davises to build a specific industry standard design barn and to Davises obtain express permission from the Tosh parties before modifying that design. The Davises were given a procedures manual with mandatory and suggested standards and procedures that they were to use in raising the hogs. (2009 SSA ¶ 1.11.) The SSA contains an exclusivity provision prohibiting the Davises from contracting with any other hog producers. (2009 SSA ¶ 7.5.) The Davises are subject to weekly or biweekly inspections by Tosh agents, who may enter the barns at any time to review the Davises' hog-raising operation and inspect their weekly inventory reports and records, also required under the SSAs. (2009 SSA ¶¶ 8.1-8.3; R. Davis Dep. 205:13-210:14, DN 400-2.) Finally, although the Davises retain ownership over the manure, the SSAs require that the Davises utilize an injection method, and the size of deep manure storage pits was determined by the required standard design. The Tosh parties' control weighs heavily in favor of an agency relationship. *See Tyson Foods, Inc. v. Stevens*, 783 So. 2d 804, 808-09 (Ala. 2000) (Upholding a jury's finding of agency where, among other things, the defendant controlled the location and

11

design of hog houses, required a certain waste-management system, inspected farmer's hog operation, and provided food, veterinary supplies, and care for the hogs).

The Tosh Defendants argue that the relationship between the farmers and the Tosh parties is more akin to a bailment, wherein the Tosh parties entrust their hogs to the farmers for the specific purpose of hog raising. Defendants note that Kentucky courts often do not impose liability on a bailor for a bailee's actions because a bailor normally does not have extensive control over the bailee. *See Ry. Co. v. Kelly Const. Co.*, 406 S.W.2d 305, 309 (Ky. 1966). However, unlike a bailment, the Tosh parties exercise a great degree of control over key aspects of the Davises' hog-raising activities. *Compare with Pancake v. Cull*, 338 S.W.2d 391, 392 (Ky. 1960) (finding a mechanic is the bailee and independent contractor of a vehicle's owner "since the owner is concerned only with the results of the work and not with the detailed manner in which it is carried out"). Based on the facts discussed above, claims against the Tosh Defendants party to the SSAs—Tosh Pork and Tosh Farms GP—may proceed under a vicarious liability theory.

Plaintiffs also seek to hold several other entities liable for the Davises' alleged torts. Tosh Farms was formally dissolved in December 2010. While in operation, Tosh Farms did not own any hogs delivered to the Davises or enter into any SSA with the Davises. Pig Palace likewise was not a party to any SSA with the Davises nor had any role in or interaction with the Davises' hog-farming operations. The company merged into Tosh Pork in 2010. Shiloh Hills manufactures precast concrete components used in hog barn construction. Although the Davises purchased slats manufactured by Shiloh Hills for use in their hog barns, Plaintiffs do not allege any defects in the slats, nor do they contend that the slats have caused any of their alleged harms. Shiloh Hills was not a party to the SSAs nor has any role in the Davises' hog-raising activities.

Finally, Bacon By Gosh transports hogs, feed, and other materials to and from hog barns and delivers them to market. Plaintiffs do not allege harm related to the corporation's transportation activities, and Bacon By Gosh is not a party to the SSAs. Plaintiffs argue that although these entities were not parties to the SSAs and had no direct role in the operations at the barns in question, they should be held liable as agents of one another because each entity relies on the other for their hog-raising operation to function. However, reliance is not the test for determining an agency relationship. Indeed, employers rely on the expertise of their independent contractors; this fact alone does not transform a relationship into that of principal and agent or employer and employee.

Plaintiffs primarily offer two facts in support of their argument for imposing vicarious liability on these entities. First, Plaintiffs point to an Assurance of Voluntary Compliance ("AVC") among the Kentucky Attorney General, Tosh Farms, Tosh Farms GP, Pig Palace, and Shiloh Hills.[11] An AVC, the Attorney General's version of an out-of-court settlement, is not considered an admission or violation for any purpose. Consumer Protection and the Law § 7:12; *see also* Ky. Rev. Stat. § 367.230. By signing the AVC, the Tosh entities agreed to refrain from certain business practices specified under the agreement. The agreement does not, as Plaintiffs suggest, serve as an admission that the parties are agents of one another, nor does it create joint and several liability.

Second, Plaintiffs note that Jimmy Tosh is a partner of Tosh Farms GP, a member of Tosh Pork, and one of two shareholders in Bacon By Gosh. Plaintiffs contend that because Mr. Tosh is "the primary figure in control" of these entities, all these entities are his agents and, by extension, are agents of one another. However, other than Jimmy Tosh's involvement in these

---

[11] Neither Tosh Pork, which had not yet formed, nor Bacon By Gosh was party to the AVC. Although Jimmy Tosh signed the AVC in his capacity as agent of the other entities, he was not a party to the agreement in his individual capacity. (*See* AVC, DN 363-21.)

different entities, Plaintiffs point to no evidence indicating that any of these entities control or act on behalf of one another, a key factor in finding an agency relationship. *See Phelps*, 103 S.W.3d at 50. Furthermore, to the extent Plaintiffs' arguments implicate a veil piercing theory, there is no reason to disregard the distinctiveness of these corporate entities. The record contains no facts indicating "such a unity of ownership and interest" that the separateness of each of these entities has ceased to exist merely by virtue of Mr. Tosh's involvement with each. *See generally Sudamax Industria e Comercio de Cigarros, Ltda v. Buttes & Ashes, Inc.*, 516 F. Supp. 2d 841 (W.D. Ky. 2007). Because there is no basis for their liability in the instant matter, the Court finds that Shiloh Hills, Tosh Farms; Pig Palace, and Bacon By Gosh are entitled to summary judgment.

Finally, although Jimmy Tosh is a partner of Tosh Farms GP and a member of Tosh Pork, there is no evidence in the record that Mr. Tosh personally committed any of the torts alleged. Thus, Mr. Tosh's liability would be based on his role as general partner and member of Tosh Farms GP and Tosh Pork, respectively. "[A]n officer, director, or shareholder, when acting as an agent of the corporation, is also protected from personal liability when acting within his authority to bind the principal." *Young v. Vista Homes, Inc.*, 243 S.W.3d 352, 363 (Ky. Ct. App. 2007) (quoting *Smith v. Isaacs,* 777 S.W.2d 912, 913 (Ky. 1989)). However, in a general partnership, "all partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by law." Ky. Rev. Stat. § 362.1-306. Thus, to the extent that Tosh Farms GP may be held liable for Plaintiffs' claims, Mr. Tosh may also be held liable. For the foregoing reasons, Mr. Tosh is otherwise shielded from liability.

In conclusion, the Tosh Defendants' motion for partial summary judgment regarding vicarious liability is granted as to defendants Shiloh Hills, Tosh Farms, Pig Palace, and Bacon

14

By Gosh, but denied as to Tosh Farms GP, Tosh Pork, and Jimmy Tosh in his role as partner of Tosh Farms GP.

## II. <u>Nuisance</u>

The Plaintiffs, Tosh Defendants, and Davis/Howell Defendants have all moved for summary judgment on Counts I & II of Plaintiffs' Complaint, which allege both temporary and permanent nuisance claims. Under Kentucky law, a nuisance "arises from the unreasonable, unwarranted, or unlawful use by a person of his own property and produces such material annoyance, inconvenience, discomfort or hurt that the law will presume a consequent damage." *Smith v. Carbide & Chems. Corp.*, 507 F.3d 372, 379 (6th Cir. 2007) (quoting *City of Somerset v. Sears*, 233 S.W.2d 530, 532 (Ky. 1950)) (internal quotations omitted). Its essence is the interference with the use and enjoyment of land. *Id.* Kentucky consistently treats odor complaints as nuisance claims. *See, e.g.*, *Brockman v. Barton Brands, Ltd.*, 2009 WL 4252914 (W.D. Ky. Nov. 25, 2009) (collecting cases). A nuisance claim has two elements: "(1) the reasonableness of the defendant's use of his property, and (2) the gravity of harm to the complainant." *Louisville Ref. Co. v. Mudd*, 339 S.W.2d 181, 186 (Ky. 1960). Kentucky law recognizes both temporary and permanent nuisances. *See, e.g.*, *Lynn Mining Co. v. Kelly*, 394 S.W.2d 755, 755 (Ky. 1965).

First, in their motion for summary judgment, Defendants Ron and Heather Davis argue that Plaintiffs' nuisance claims are barred by Ky. Rev. Stat. § 413.072, more commonly known as the "Right to Farm Act." In part, the Act states:

> (1) It is the declared policy of the Commonwealth to conserve, protect, and encourage the development and improvement of its agricultural land and silvicultural land for the production of food, timber, and other agricultural and silvicultural products. When nonagricultural land uses extend into agricultural and silvicultural areas, agricultural and silvicultural operations often become the subject of nuisance suits or legal actions restricting agricultural or silvicultural operations. As a result, agricultural and silvicultural

operations are sometimes either curtailed or forced to cease operations. Investments in farm and timber improvements may be discouraged. It is the purpose of this section to reduce the loss to the state of its agricultural and silvicultural resources by clarifying the circumstances under which agricultural and silvicultural operations may be deemed to be a nuisance or interfered with by local ordinances or legal actions.

(2) No agricultural or silvicultural operation or any of its appurtenances shall be or become a nuisance or trespass, private or public, or be in violation of any zoning ordinance, or be subject to any ordinance that would restrict the right of the operator of the agricultural or silvicultural operation to utilize normal and accepted practices, by any changed conditions in or about the locality thereof after the same has been in operation for more than one (1) year, when the operation was not a nuisance at the time the operation began. The provisions of this subsection shall not apply whenever a nuisance, trespass, or zoning violation results from the negligent operation of an agricultural or silvicultural operation or its appurtenances.

Ky. Rev. Stat. § 413.072(1)-(2). The Davises contend that right-to-farm statutes such as Kentucky's "provide that actions against agricultural operations are banned unless brought within one year of the start of the operation or one year of a substantial change in the operations." (Defs.' Mot. for Summ. J., DN 343-1, p. 15.)

The Court is unable to locate any case law interpreting this statute under facts similar to those in the case at bar. In fact, courts have rarely considered § 413.072 in any context, and the statute's exact meaning is notably difficult to ascertain. *See Opinion of the Attn'y Gen.*, OAG 97-31, 1997 Ky. AG LEXIS 65 (Aug. 21, 1997). However, one court notes that the purpose of right-to-farm statutes, enacted in all fifty states, is often to "alert and place on notice those non-farm owners who move into agricultural areas that use of their property may be subject to the rights of the nearby *pre-existing* farm operations." *Shore v. Maple Lane Farms, LLC*, 2012 WL 1245606, at *10 (Tenn. Ct. App. Apr. 11, 2012) (emphasis added).

The language the Kentucky act comports with this observation. The statute notes that "[w]hen non-agricultural land uses *extend into* agricultural areas, agricultural operations often become the subject of nuisance suits"; thus, "[n]o agricultural . . . operation . . . shall be or become a nuisance or trespass, private or public, . . . by *any changed conditions in or about the locality thereof* after the same has been in operation for more than one (1) year." Ky. Rev. Stat. § 413.072(1)-(2) (emphasis added). There is no evidence of changed conditions in the locality surrounding the Brewers Highway barns. Rather, the Plaintiffs' residences were in existence when the Davises built their barns and began receiving hogs in 2006 and 2007. "[T]he right-to-farm concept retains its strongest equitable justification when connected with a requirement that the farming operations being protected were in existence prior to changes in the surrounding area that are now giving rise to the alleged nuisance." *Shore*, 2012 WL 1245606, at *11. Such is not the case here. The Right to Farm Act does not bar the instant suit. No Defendant has argued that Plaintiffs' claims are otherwise untimely. The Court will now address the merits of Plaintiffs' nuisance claims.

A.   *Temporary Nuisance*

All Defendants argue that any claim under temporary nuisance fails because Plaintiffs have provided no evidence quantifying the loss of use of their property due to the barns' operation. A permanent structure that can be changed, repaired, or remedied at reasonable expense to abate the nuisance is temporary. *Lynn Mining Co.*, 394 S.W.2d at 758 (citing *City of Ashland v. Kittle,* 305 S.W.2d 768, 769 (Ky. 1957)).

> [T]he permanent/temporary distinction matters for assessing what measure of damages a party must provide to sustain its burden of proof. The rule in Kentucky is clear: "Where the property is occupied by the owner the measure of damages in a temporary nuisance case is the diminution in the value of the use of the property during the continuance of the nuisance . . . ."

*Barnette v. Grizzly Processing, LLC*, 809 F. Supp. 2d 636, 653-55 (E.D. Ky. 2011) (quoting *Adams Constr. Co. v. Bentley,* 335 S.W.2d 912, 913 (Ky. 1960)). Plaintiffs only have offered proof of the diminution in the market value of their properties.

Although they failed to address this issue in their response, some Plaintiffs previously have testified as to how the odors have affected their use of their properties: fewer family gatherings, friends do not visit, children cannot play outdoors as often, Plaintiffs cannot enjoy outdoor investments such as swimming pools or patios, and the odors prevent Plaintiffs from opening their windows or remaining outside. "While the diminution in the value of the use of property is a rather elusive concept, it has been recognized that discomfort caused by this type of injury may be considered as an element of damages." *Radcliff Homes, Inc. v. Jackson*, 766 S.W.2d 63, 66 (Ky. Ct. App. 1989) (quoting *Price v. Dickson, Ky.*, 317 S.W.2d 156, 157 (Ky. 1958) (internal quotation marks omitted)); *but see* Ky. Rev. Stat. § 411.560(3) ("No damages shall be awarded for annoyance, discomfort, sickness, emotional distress, or similar claims for a private nuisance"). In any event, "Plaintiff[s] must introduce a 'tangible figure from which the value of the use can be deduced,' otherwise the valuation is pure speculation." *Dickens v. Oxy Vinyls, LP*, 631 F. Supp. 2d 859, 866 (W.D. Ky. 2009) (quoting *Adams Constr.*, 335 S.W.2d at 914). Plaintiffs have not provided the requisite proof regarding any diminution in the value of use and, thus, have not met their burden of proof regarding a temporary nuisance.

Whether the nuisance is permanent or temporary is a question of fact for the jury. *Barnette*, 809 F. Supp. 2d at 654-55 (citing *Signal Mountain Portland Cement Co. v. Brown,* 141 F.2d 471, 475 (6th Cir. 1944)). As a result, courts that have confronted this issue have denied summary judgment on both the temporary and permanent nuisance claims, leaving the determination to a jury. *See id.* ("Plaintiffs have offered only proof of diminution in value

damages. This means that if the nuisance and trespass were temporary, they have not met their burden of proof. However, if the claims were permanent in nature, they have satisfied their burden. . . . As a result, [the defendants'] motions for summary judgment are denied."); *cf. Huffman v. United States*, 82 F.3d 703, 705-06 (6th Cir. 1996) (analyzing temporary/permanent distinction in context of relevant statute of limitations). However, this Court has also granted Defendants' motion to exclude Plaintiffs' expert testimony regarding biofilters, which Plaintiffs contend would reasonably abate the nuisance alleged in this case.[12] Although Plaintiffs have mentioned other odor controls, such as using scrapers or external covered storage tanks, they do not address the costs associated with such methods or their viability. Plaintiffs have not shown a material issue of fact for a jury as to whether the nuisance in question can be altered at a reasonable expense to eliminate the offending condition. *Lynn Mining Co.*, 394 S.W.2d at 758. Therefore, Defendants are entitled to summary judgment on Plaintiffs' temporary nuisance claim.

   B. _Permanent Nuisance_

   Defendants also argue they are entitled to summary judgment on Plaintiffs' permanent nuisance claim. A permanent nuisance is any private nuisance that (1) cannot be corrected or abated at reasonable expense to the owner and (2) that is relatively enduring and not likely to be abated voluntarily or by court order. *Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604, 625 (Ky. Ct. App. 2003) (citing Ky. Rev. Stat. § 411.530(1)). A permanent nuisance exists where "a defendant's use of property causes unreasonable and substantial annoyance to the occupants of the claimant's property or unreasonably interferes with the use and enjoyment of such property, and thereby causes the fair market value of the claimant's property to be materially reduced."

---

[12] Part IV.C of this Court's Opinion on the parties' *Daubert* motions addresses this testimony.

Ky. Rev. Stat. § 411.530(2). Thus, for a permanent nuisance, "the measure of damages is the depreciation in the market value of the property." *Brumley v. Mary Gail Coal Co.*, 246 S.W.2d 148, 151 (Ky. 1952). Further, "[d]etermination of fair market value ordinarily necessitates expert opinion." *Dickens*, 631 F. Supp. 2d at 866 (citing *Jones v. Jones*, 245 S.W.3d 815, 820 (Ky. Ct. App. 2008)).

Defendants' primary argument focuses on Plaintiffs' expert, Mary Clay, whose testimony all Defendants have moved to exclude. (*See* DN 351 & 357.) However, in a separate Opinion, this Court denied those motions. Thus, there remain disputed issues of material fact in regard to Plaintiffs' permanent nuisance claim. The Tosh Defendants further argue that the Court should dismiss the claims of any class member who moved into the class radius after the barns began operation. The Defendants note that Plaintiffs have not offered proof that property values continue to decline as the barns continue their operations, arguing that "those class members would already have obtained the benefit of any decreased fair market value caused by the hog odors." (Tosh Defs.' Mem. in Supp. of Partial Summ. J., DN 360-1.) Defendants' argument is well-taken, and Plaintiffs have not addressed it in their response. Therefore, the Court finds summary judgment on Plaintiffs' permanent nuisance claim is warranted against all class members who moved into the class area after the second Brewers Highway barn went into operation on May 25, 2007. (*See* R. Davis Dep. 111:6-11, DN 343-5.)

Finally, the Tosh Defendants argue that the absent class members' permanent nuisance claims must be dismissed because Plaintiffs have not established a diminution in the fair market value of their properties. Alternatively, Defendants move to decertify the class. The Court declines to rule on these issues at this time and reserves ruling until after conferring with the parties during an in-person hearing, to be scheduled in a separate order.

Therefore, Plaintiffs' motion for summary judgment as to their nuisance claims is denied. Defendants' motion for summary judgment on Plaintiffs' temporary nuisance claim is granted, but summary judgment is denied as to Plaintiffs' permanent nuisance claim. The Court reserves ruling on decertifying the class and the potential dismissal of absent class members' damages until a hearing is conducted. Plaintiffs have also moved to amend the scheduling order to allow for additional discovery to obtain more specific information regarding the diminution in value of absent class members' properties. (DN 407.) For the same reason, the court will reserve ruling on this motion as well.

### III.   <u>Battery</u>

In Kentucky, battery is any unlawful touching of the person of another, either by the aggressor, or by any substance set in motion by him or her. *See Vitale v. Henchey,* 24 S.W.3d 651, 657 (Ky. 2000) (quoting *Sigler v. Ralph,* 417 S.W.2d 239, 241 (Ky. 1967)). In a May 3, 2011, Memorandum Opinion and Order, (DN 200), the Court recognized that the issue of whether particulate touching can result in a battery is an issue of first impression under Kentucky law and noted that other courts have allowed a battery claim to proceed under similar circumstances. *See, e.g.*, *Leichtman v. WLW Jacor Commc'ns, Inc.*, 634 N.E.2d 697 (Ohio Ct. App. 1994). The Court allowed Plaintiffs to amend their Complaint to add the claim of battery, concluding that "if Plaintiffs can prove that the acts in question were intentional . . . , Plaintiffs will have a valid claim for battery." (DN 200.)

Plaintiffs have moved for summary judgment on their battery claim. All Defendants move for summary judgment as well, arguing the record reveals no evidence showing that any Defendant acted with the requisite intent. "[I]ntent is an essential element of assault and battery." *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001). The intent necessary for battery "is

an intent to make contact with the person, not the intent to cause harm." *Vitale*, 24 S.W.3d at 657-58 (quoting Prosser & Keeton on Torts, § 8 at 36 (5th ed. 1984)). Further, "all consequences which the actor desires to bring about are intended as well as consequences that are certain or substantially certain to result from the act." *Id.* at 657 (citing Restatement (Second) of Torts § 8A, cmt. b (1965)). Plaintiffs argue that the intent requirement is satisfied by Defendants' intentional construction and ventilation of the barns, adding "[e]ven if the Defendants did not intend to harm the Plaintiffs, they did intend to emit large volumes of odors onto the surrounding residents without the consent of the surrounding residents." (Pls.' Resp. 16, DN 384.) The Court disagrees.

As this Court previously has observed, other courts have allowed claims based on particulate touching to proceed; however, such cases require a plaintiff to prove all elements of a battery claim, including intent.

> Indeed, it is this intent that separates battery from mere negligence. . . . If an automobile driver runs down a man in the street before him, with the desire to hit him, or with the belief that he is certain to do so, it is an intentional battery; but if he has no such desire or belief, but merely acts unreasonably in failing to guard against a risk which he should appreciate, it is negligence.

*Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 547-48 (D. Md. 1997). In *Shaw*, the court found a claim in battery would not lie against a cigarette manufacturer for a plaintiff's exposure to secondhand smoke. There the court found that, while the defendant "may have had knowledge that second-hand smoke would reach some non-smokers . . . such generalized knowledge is insufficient to satisfy the intent requirement for battery." *Id.* at 548. Another court upheld dismissal of a plaintiff's battery claims based on secondhand smoke, even where smokers had continued to smoke despite knowing that the plaintiff suffered ill effects from smoke. *Pechan v. DynaPro, Inc.*, 622 N.E.2d 108, 118-19 (Ill. 1993) ("[T]he act of smoking generally is

22

not done with the intent of touching others with emitted smoke"). Similarly, a defendant who intentionally burned yard waste on his property was held to lack the requisite intent for battery where there was no evidence the defendant would know the fumes were substantially certain to come in contact with the plaintiff. *Rose v. Braciszewski*, 2009 WL 3276431, at *4-*5 (Mich. Ct. App. Oct. 13, 2009). The court reasoned that "[e]ven when the prevailing winds might have given notice that the smoke and fumes would travel in the general direction of [plaintiff's] property, there is no evidence that defendants were substantially certain that the smoke and fumes would not pass over [plaintiff] . . . or that [plaintiff] would not otherwise be safe from the smoke and fumes." *Id.* at *5.

Likewise here, the record does not indicate any defendant raises hogs or ventilates the barns with the purpose of releasing odors into the surrounding community. Although defendants may have knowledge that odors could reach neighboring properties, like the courts in the aforementioned cases, the Court finds such generalized knowledge is insufficient to satisfy the intent requirement for battery. Plaintiffs can point to no authority, and the Court has found none, that supports holding a defendant liable for battery with proof of only such generalized knowledge as to intent. Defendants are entitled to summary judgment on Plaintiffs' battery claim.

## IV.    Negligence, Negligence Per Se, and Gross Negligence

Plaintiffs assert actions in negligence, negligence per se, and gross negligence. Negligence requires that the defendant owe the plaintiff a duty, a breach of that duty, and that the breach cause the plaintiff's injury. *Dickens*, 631 F. Supp. 2d at 864 (quoting *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003)). Failure to establish any of these elements is fatal to Plaintiffs' claim. *M & T Chems., Inc. v. Westrick,* 525 S.W.2d 740, 741 (Ky. 1974).

23

"[N]egligence *per se* is merely a negligen[ce] claim with a statutory standard of care substituted for the common law standard of care." *Pile v. City of Brandenburg*, 215 S.W.3d 36, 41 (Ky. 2006). Indeed, "the only discernible difference between common-law negligence and negligence per se is 'how they are proved.'" *Stivers v. Ellington*, 140 S.W.3d 599, 601 (Ky. Ct. App. 2004) (quoting 57A Am. Jur.2d *Negligence* § 687 (2004)). Therefore, just as in ordinary negligence claims, causation and injury must still be proven in negligence *per se* claims. *Id.*

### A. *Injuries to Real Property*

Defendants argue that the injury requirement of negligence is not satisfied by injury to real property and that Plaintiffs must show some form of physical personal injury. In support of this contention, Defendants cite to a case from this district, which noted that in Kentucky, "actions for damages to real property caused by another's negligence sound in trespass, not negligence." *Dickens*, 631 F. Supp. 2d at 864 (quoting *Wimmer v. City of Ft. Thomas*, 733 S.W.2d 759, 760 (Ky. Ct. App. 1987)) (internal quotations omitted); *see also Rockwell Int'l Corp.*, 143 S.W.3d at 609-10. Plaintiffs argue the case cited by the *Dickens* court is distinguishable because it merely addressed which statute of limitations was appropriate. Although the specific issue before the *Wimmer* court regarded the appropriate statute of limitations, the distinction between trespass and negligence claims applies beyond that limited scope. Indeed, the court in *Dickens* applied *Wimmer* in granting summary judgment for defendants on the merits of plaintiffs' trespass claim.

Plaintiffs argue that *Wood v. Wyeth-Ayerst Labs.*, 82 S.W.3d 849 (Ky. 2002) supports a negligence claim where a plaintiff shows damage to real property. *Wood*, which addressed whether a plaintiff's increased risk of future bodily injury supported a negligence claim, cited approvingly to the Restatement (Second) of Torts' definition of physical harm. "The words

24

'physical harm' are used to denote physical impairment of the human body, or of tangible property . . . ." *Wood*, 82 S.W.3d at 855 (quoting Restatement (Second) of Torts § 7, cmt. e (1965)). Defendants note that any reference to property damage in *Wood* was dicta, and thus nondispositive. In any event, Plaintiffs point to no evidence in the record evidencing a physical injury or impairment of their property resulting from the odors. Rather, the only real property damages Plaintiffs allege are a decrease in their properties' fair market value as a result of odors from Defendants' barns. Such does not support a claim of negligence.

   B. *Personal Injuries*

   Plaintiffs have also failed to present personal injuries to support a negligence claim. First, all but one Plaintiff acknowledge they have suffered no physical harm as a result of the odors from the Defendants' barns. Although some Plaintiffs recount mental or emotional distress as a result of the odors,[13] none have sought or received treatment or counseling and none present medical proof in support of their distress claims. This is insufficient to support a negligence cause of action in Kentucky. *See Osborne v. Keeney*, 2012 WL 6634129, at *9 (Ky. Dec. 20, 2012) ("Distress that does not significantly affect the plaintiffs [sic] everyday life or require significant treatment will not suffice. And a plaintiff claiming emotional distress damages must present expert medical or scientific proof to support the claimed injury or impairment").

---

[13] *See, e.g.*, T. Allen Dep., 33:22-34:21, July 27, 2010, DN 366-8 (no physical injuries; feels stress and frustration that odors affect his ability to participate in outdoor activities); K. Hall Dep., 6:15-7:17 & 32:15-33:3, Aug. 12, 2011, DN 366-6 (suffers from emotional distress as a result of frustration from the odors; has not sought medical treatment or counseling); L. Pearson Dep., 9:4-19, Aug. 12, 2011, DN 366-7 (gets angry because he is unable to remain outdoors because of the odors); W. Ham Dep., 12:4-13:13, July 14, 2011, DN 366-4 (no physical injuries as a result of odors; odors cause mental anguish because "everybody is upset"; has not sought counseling or other treatment).

Secondly, the only Plaintiff[14] who claims to suffer from physical symptoms as a result of the odors has offered no proof as to causation. Terry Powell testified that he suffers from a runny nose, congestion, and has vomited twice because of the odors from the Ron Davis barns. However, Powell has not sought treatment from a doctor for these medical problems. (T. Powell Dep., 176:5-178:22, May 4, 2010, DN 366-25.) Furthermore, he presents no testimony linking such commonplace ailments to the presence of hog odors. *See Bell v. DuPont Dow Elastomers, LLC*, 640 F. Supp. 2d 890, 897 (W.D. Ky. 2009) ("Though Plaintiffs have complained that the smell makes them ill and that they suffer physical side effects, none have produced any medical evidence of illness or injury."); *Adams v. Cooper Indus., Inc.*, 2012 WL 2339741 (E.D. Ky. June 19, 2012) (Plaintiff alleging a toxic substance caused him harm must establish causation through expert testimony). Thus, Powell has not proven causation, and his claims in negligence must fail.

The Court finds that because Plaintiffs are not able to establish a genuine issue of material fact as to at least one element of the claim of negligence, summary judgment for Defendants is proper on Plaintiffs' claims for negligence and negligence *per se*. Summary judgment in favor of Defendants is similarly proper on Plaintiffs' claims for gross negligence. Gross negligence is a heightened level of negligence defined as a "conscious and voluntary act or omission which is likely to result in grave injury when in face of clear and present danger of which alleged tortfeasor is aware" or failure to exercise slight care. *Sparks v. Re/Max Allstar Realty, Inc.,* 55 S.W.3d 343, 348 (Ky. Ct. App. 2000); *Louisville & Nashville R.R. Co. v. George*, 129 S.W.2d 986 (Ky. 1939). However, gross negligence still requires a plaintiff to establish actual injury. Here, Plaintiffs are unable to establish the injury requirement and, therefore, are

---

[14] Although Plaintiffs state that Terry Powell's physical injury is only one "out of thousands," Plaintiffs offer no support for this statement in the record. In their fact section, Plaintiffs cite to deposition testimony from Rhonda Free, who remembers her husband "coughing and puking" because the hog odors were so strong. (R. Free Dep., 48:5-17, May 27, 2010, DN 363-3.) However, Free did not testify that she suffered from such symptoms, and her husband is not a party to this action.

unable to establish a cause of action for gross negligence. Furthermore, the record shows that under the SSAs, the Davises agreed not to create a nuisance, to abide by all applicable laws and regulations, and to inject their waste rather than spread it in an effort to curb odors. The barns are properly permitted and state regulators have not found the Davises in violation of any air-quality regulations or odor standards. The undisputed facts do not support a finding that Defendants failed to exercise even slight care. Thus, Defendants' motions for summary judgment as to negligence, negligence *per se*, and gross negligence/punitive damages are granted, and Plaintiffs' motion for summary judgment is denied as to those claims.

### V.   <u>Trespass</u>

Next, all parties have moved for summary judgment on Plaintiffs' claims for trespass. A person trespasses if he or she "enters or remains upon land in the possession of another without the possessor's consent." *Bradford v. Clifton,* 379 S.W.2d 249, 250 (Ky. 1964); *see also Carbide & Chems. Corp.*, 226 S.W.3d at 54. "Kentucky law allows recovery under trespass in either of three instances: (1) the defendant was engaged in an extra-hazardous activity, (2) the defendant committed an intentional trespass or (3) the defendant committed a negligent trespass." *Rockwell Int'l Corp.*, 143 S.W.3d at 619.

Plaintiffs base their action in trespass on the hog odors emanating from the Brewers Highway barns. However, particles that are visibly undetectable and transient, such as odors, are not sufficient to state a claim for trespass under Kentucky law. *See Brockman*, 2009 WL 4252914 at *5; *Dickens*, 631 F. Supp. 2d at 865. Plaintiffs cite *Smith v. Carbide & Chems. Corp.* in support of their claim. 226 S.W.3d at 56. However, in *Carbide*, the defendants did not contest the plaintiffs' characterization of groundwater and soil contamination through imperceptible

27

particles as an intentional trespass, and thus the court did not address that issue in its analysis. *Id.* at 54.

In Kentucky, "a trespass only occurs when an object or thing enters a person's property and *interferes with his or her possession or control*." *Brockman*, 2009 WL 4252914 at *5 (emphasis added) (citing *Bartman v. Shobe*, 353 S.W.2d 550, 555 (Ky. 1962) (Trespass is "more visible and tangible" than a nuisance)). Plaintiffs' alleged injuries center on the odors' interference with the use and enjoyment of their property, not their right to exclusive possession. The evidence does not support a claim for trespass.

Plaintiffs Rhonda Free, Brenda Jordan, and Michael and Kandis Jordan also bring individual tort claims based on alleged water contamination resulting from the Davis/Howell Defendants' injection method of fertilization. Rhonda Free testifies that in spring 2009, manure was applied to fields near her home. Afterward, Free says her water would "stink" and she would not cook or drink with it until the smell dissipated. Free did not have her water tested. Brenda Jordan ("Brenda") testifies that a manure application occurred near her property in late April 2009. (B. Jordan Dep., 80:3-25, May 5, 2010, DN 363-15.) During the last week of May, she began having indigestion. She stopped drinking her water, and the symptoms ceased. (Id., 55:10-17.) Soon after, Brenda noticed a smell in her water whenever she used it. (Id., 56:3-14.) Brenda's son, Michael, said the water smelled "like something dead or like waste." (M. Jordan Dep., 119:12-14, July 28, 2010, DN 363-10.) Brenda's daughter-in-law, Kandis, testified that when Brenda ran her water, it "smelt [sic] just like the hog smell." (K. Jordan Dep., 42:4-8, July 28, 2010, DN-363-14.) From June 2, 2009, until July 11, 2009, Brenda discontinued showering at home. (B. Jordan Dep., 56:12-14.) On June 10, 2009, Brenda's water tested positive for fecal coliform but negative for E. coli. (Id., 69:3-5.) The test did not indicate whether the source was

28

animal or human. (Id., 115:20-23.)[15] Thereafter, Brenda treated her water with bleach. (Id., 74:9-75:6.) Brenda no longer consumes her water for fear of contamination. Michael and Kandis Jordan, Brenda's son and daughter-in-law, live adjacent to Brenda. They had similar experiences with water contamination, and fecal coliform was detected in their well water during the same time period. (K. Jordan Dep., 16:23-25.) Unlike Brenda, Michael and Kandis did not treat their water. (Id., 17:1-18:22.) The couple no longer notices an odor in their water, but they do not drink from their well water.[16]

The Davis/Howell Defendants have collectively moved for summary judgment on these Plaintiffs' water contamination claims. First, any claims for personal injuries due to water contamination suffer from the same defects as the Plaintiffs' personal injury claims discussed in Section IV, *infra*. Brenda Jordan, who complains of indigestion and other physical symptoms, never consulted a physician to determine the cause of her ailments. This is not enough to survive summary judgment. *See Bell v. DuPont Dow Elastomers, LLC*, 640 F. Supp. 2d 890, 897 (W.D. Ky. 2009), and discussion *infra* Part IV.

Actions for damages to real property caused by another's negligence sound in trespass, not negligence. *Wimmer*, 733 S.W.2d at 760. That said, Kentucky courts recognize negligent trespass as a cause of action. *Rockwell Int'l Corp.*, 143 S.W.3d at 620. The three basic elements of negligent trespass are "(1) the defendant must have breached its duty of care (negligence); (2) the defendant caused a thing to enter the land of the plaintiff, and (3) the thing's presence causes harm to the land." *Id.* (citing Restatement (Second) of Torts § 165 cmt. b).

---

[15] Brenda Jordan hypothesized that that the hog waste injected into fields near her home in early April 2009 contaminated the water supply after heavy seasonal rains. Brenda testified that Aloma Dew, the individual who tested her water, did not say what caused the contamination, but that Dew thought the test "backed up [Brenda's] theory." (B. Jordan Dep., 79:3-21.)

[16] Michael Jordan testified the family had stopped drinking from the well water before the hog barns were built, in around 2004. (M. Jordan Dep., 80:23-81:9, DN 363-10.)

The Davis/Howell Defendants argue that these Plaintiffs have failed to prove causation. Cases similar to this one have focused on expert testimony in establishing causation. *See Dickens*, 531 F. Supp. 2d at 865; *Brockman*, 2009 WL 4252914 at *1; *Wilhite v. Rockwell Intern. Corp.*, 83 S.W.3d 516, 520 (Ky. 2002)). However, as one court points out:

> [w]hat is missing from these cases is any definitive statement that Kentucky law *requires* an expert to establish causation. And Kentucky courts have been clear when plaintiffs must present expert testimony to survive summary judgment. *See, e.g., Underwood v. Kousa*, 2011 WL 2416858, at *2 (Ky. Ct. App. Jun. 17, 2011) ("Liability for medical negligence generally requires expert medical testimony to establish the applicable standard of care, its breach, and consequent causation of injury... . Further, a plaintiff's failure to provide medical proof is generally fatal to the cause of action, and such a case is appropriate for summary disposition... .") (citing *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App.2006)).

*Barnette*, 809 F. Supp.2d at 643. Without deciding whether an expert is required to prove causation, the Court holds that the record before it fails to create a triable issue of fact. Plaintiffs have testified that manure was applied to land near their homes in late April. Plaintiffs' water began to smell a month later and, upon testing weeks after,[17] was confirmed to have fecal coliform. However, the test did not indicate the source of the contaminants or the manner of contamination. Plaintiffs have offered no evidence of how manure applied to a nearby field actually entered their land and water sources, other than Brenda Jordan's theory that heavy rains caused flooding. Rather, they contend, the proof is in the pudding: the Plaintiffs believed the water smelled like hog manure and, thus, the hog manure applied to nearby land a month previously must have been the culprit. However, mere speculation will not defeat a motion for summary judgment. *See Pardue v. Perdue Farms Inc.*, 925 N.E.2d 482, 489 (Ind. 2010) ("Although the [plaintiffs] may well have feared that manure from the [defendants'] Farm was harming their horses, their failure to prove that . . . the deaths of their horses was anything more than a temporal coincidence is fatal to their claim that their fear was reasonably justified").

---

[17] The Court notes that Plaintiff Rhonda Free did not even test her water.

Plaintiffs' individual water contamination claims must fail. The Davis/Howell Defendants' motion for summary judgment on this issue is granted.

**VI.**      **Product Liability Claim**

The Plaintiffs, Tosh Defendants, and Davis/Howell Defendants also all contend they are entitled to summary judgment as to Plaintiffs' product liability claim. Under Kentucky products liability law, a plaintiff may advance numerous theories of liability. *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247, 250 (Ky. 1995), *overruled on other grounds by Martin v. Ohio Cnty. Hosp. Corp.*, 295 S.W.3d 104 (Ky. 2009). Kentucky's Products Liability Act (PLA) "applies to all damage claims arising from the use of products, regardless of the legal theory advanced." *Monsanto Co. v. Westinghouse Elec. Corp.,* 950 S.W.2d 811, 814 (Ky. 1997). Whatever products liability theory a plaintiff pursues, there are certain requirements that are found in all products liability cases. The identification of a product that caused a plaintiff's injury is the threshold requirement of a products liability claim. *Collins v. Ansell Inc.*, 2003 WL 22769266, at *2 (W.D. Ky. Nov. 19, 2003). Whether an object in question is a "product" is a question of law. *See Bryant v. Tri-Cnty. Elec. Membership Corp.*, 844 F. Supp. 347, 353 (W.D. Ky. 1994).

Plaintiffs argue that the Brewers Highway barns are products under Kentucky law. The Defendants contend that, as improvements to real property, the barns are not products as a matter of law. Although Kentucky has adopted the theory of strict liability presented in the Restatement (Second) of Torts and has enacted the PLA, neither provides a definition for "product." *See* Ky. Rev. Stat. § 411.300; *Dealers Transp. Co. v. Battery Dist. Co.,* 402 S.W.2d 441 (Ky. 1965). In *Radcliff Homes*, the Kentucky Court of Appeals declined to hold a defendant strictly liable where "not one of the elements of strict liability was proven, or even argued." 766 S.W.2d at 68-69. Though not deciding whether the septic system at issue was a product, the court suggested that

31

because the septic system arguably was an improvement to real estate it would not meet the definition of a product. *Id.* The Court has found no other Kentucky case law directly on point. The Sixth Circuit has stated that "[w]here the state supreme court has not spoken, [the district court's] task is to discern, from all available sources, how that court would respond if confronted with the issue." *See Miles v. Kohli & Kaliher Assocs.*, 917 F.2d 235, 241 (6th Cir. 1990).

This Court has predicted that Kentucky courts will adopt the Restatement (Third) of Torts: Products Liability § 19 (1998). *See James v. Meow Media, Inc.*, 90 F. Supp. 2d 798, 811 (W.D. Ky. 2000) ("Although Kentucky courts have yet to adopt the Restatement Third of Torts, the Court predicts that the Kentucky Supreme Court, as it has always done in the past, will eventually adopt the newer edition of the Restatement of Torts")); s*ee also Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729 (Ky. 2011) (citing Restatement (Third) of Torts: Products Liability §§ 1 & 21 (1998) with approval). Section 19(a) of that Restatement defines a product as "tangible personal property distributed commercially for use or consumption." Commentators view this definition as looking to expand the range of things to which product liability law can apply. *See id.* cmt. b (noting "most but not necessarily all things are tangible personal property"); *see also* David W. Lanetti, *Toward a Revised Definition of "Product" Under the Restatement (Third) of Torts: Product Liability*, 35 Tort & Ins. L.J. 845, 874 (2000) (discussing expansion of doctrines to non-traditional things, such as homes, if they are mass-produced from a common design). The Restatement notes that although "[t]raditionally, courts have been reluctant to impose products liability on sellers of improved real property in that such property does not constitute goods or personalty," the law has begun to evolve in this area and, "[m]ore recently, courts have treated sellers of improved real property as product sellers in a number of contexts." Restatement (Third) of Torts: Products Liability § 19(a) cmt. e. Thus,

courts have considered improvements to real property to be products "when the context of their distribution and use is sufficiently analogous to the distribution and use of tangible personal property." *Id.*

Plaintiffs further direct the Court's attention to cases adopting this evolving view, and urge the Court to apply them to the instant matter. *See Kriegler v. Eichler Homes*, 269 Cal. App. 2d 224 (1969) (builder of mass-produced tract homes can be found liable under strict liability for defectively installed radiant heating system); *Kaneko v. Hilo Coast Processing*, 654 P.2d 343 (Haw. 1982) (seller-manufacturer of a prefabricated building that must be assembled can be held strictly liable for a defective component part); *Schipper v. Levitt & Sons, Inc.*, 207 A.2d 314 (N.J. 1965) (builder-vendor of mass-produced tract homes can be found liable under strict liability for defective water heating system). However, courts have also declined to consider as products a variety of buildings or structures. *See, e.g.*, *Brooks v. Eugene Burger Mgmt. Corp.*, 215 Cal. App. 3d 1611 (1989) (apartment complex not a product, distinguishing *Kriegler*); *Lowrie v. City of Evanston, Ill.*, 365 N.E.2d 923 (Ill. Ct. App. 1977) (open-air garage not a product, distinguishing *Schipper* and *Kriegler*); *Moore v. Jesco, Inc.*, 531 So. 2d 815 (Miss. 1988) (component parts of chicken houses are improvements to real property, not products); *Cox v. Shaffer*, 302 A.2d 456 (Pa. Super. Ct. 1973) (silo constructed on farmer's land not a product). Plaintiffs assert that the barns are mass-produced and prefabricated because the record shows plans to build approximately sixty barns over the next few years and because the barns are built in accordance to a standard design. (*See* AVC, 2, DN 363-21.) Defendants contend that the barns are more akin to structural improvements to property and, thus, are not products under Kentucky law.

The Court agrees with Defendants. First, contrary to Plaintiffs' contentions, the barns in the instant case are neither mass-produced nor prefabricated. The defendant in *Schipper*, for example, was found to be a mass-producer where it specialized in planned communities consisting of thousands of homes in multiple states. 207 A.2d at 316. There, the court found that "there are no meaningful distinctions between [the defendant's] mass production and sale of homes and the mass production and sale of automobiles and that the pertinent overriding policy considerations are the same." *Id.* at 325; *see also Kriegler*, 269 Cal. App. 2d at 225-26 (mass producer where defendant built at least four thousand homes with defective heating system). Furthermore, as the Illinois Court of Appeals noted in *Lowrie*, the cases classifying mass-produced real property as products often: "do not deal with a defect in the home per se but with a defect in some product installed therein. Thus, it appears to us that these builder-vendor cases apply strict liability to a contractor who sells a defective product along with the home, as distinguished from holding that a home is itself a product." 365 N.E.2d at 928.

Similarly, Plaintiffs do not contend a specific part or product installed in the barns is defective. Rather, they contend that the barns themselves are defective as a whole because they do not contain proper odor controls. Furthermore, the Court can find no evidence in the record, and Plaintiffs point to none, that supports classifying the barns in question as prefabricated structures. The barns are not "manufactured . . . and later assembled on- or off-site." Restatement (Third) of Torts: Products Liability § 19(a) cmt. e. Rather, the barns were individually built on-site according to standardized design plans. The barns are not prefabricated.

Finally, the policy reasons for allowing Plaintiffs to recover under a products liability theory for defective real estate improvements are not strong here. The cases so holding involved plaintiffs who sustained personal injuries or physical damage to their property as a result of the

real properties' alleged defects. *See Schipper*, 207 A.2d at 316 (infant severely scalded by defective water system); *Kriegler*, 269 Cal. App. 2d at 225 (physical property damage caused by defective heating system); *Kaneko*, 654 P.2d at 343 (ironworker injures back while assembling prefabricated building). Here, the Plaintiffs allege that the manner in which the barns are designed and/or constructed is defective because it allows for the release of odors that prevent them from enjoying and using their neighboring properties. Such injuries are not typical of a traditional products liability claim and are better addressed by existing legal theories such as nuisance law. Further, especially in light of indications by the Kentucky Court of Appeals that it would not consider a septic tank to be a product, this Court does not predict that, if confronted with the facts in the instant case, Kentucky courts would hold these barns to be products. The Court does not find that "the context of [the barns'] distribution and use is sufficiently analogous to the distribution and use of tangible personal property." Restatement (Third) of Torts: Products Liability § 19(a). Because the barns are not products, Plaintiffs' claims under a products liability theory must be dismissed.

## VII.   Civil Conspiracy

Count VIII of Plaintiffs' Complaint seeks to hold Defendants liable under a civil conspiracy theory. Although Kentucky recognizes a separate cause of action for civil conspiracy, it "is inherently difficult to prove" and is "a topic rarely dealt with in Kentucky case law." *James v. Wilson*, 95 S.W.3d 875, 896 (Ky. Ct. App. 2002). To establish a conspiracy, Plaintiffs "must show an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act." *Id.* at 897. "Notwithstanding that difficulty, the burden is on the party alleging that a conspiracy exists to establish each and every element of the claim in order to prevail." *Id.* More specifically, a defendant is subject to liability if he (a) does a

35

tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct separately considered, constitutes a breach of duty to the third person. *Id.* "Nevertheless, the presence of an unlawful act does not in and of itself render Defendants' conduct actionable as a civil conspiracy under Kentucky law." *Nat'l Info. & Commc'ns Equip. Network Inc. v. Willigan*, 2007 WL 2979928, at *5 (E.D. Ky. Oct. 11, 2007). Because civil conspiracy requires specific intent, "[m]erely proving the joint intent to engage in conduct that results in an injury is not sufficient to establish a cause of action for civil conspiracy." 15A C.J.S. *Conspiracy* § 15.

Only Plaintiffs' claim for permanent nuisance remains. Plaintiffs argue the record supports a jury question as to civil conspiracy. They contend that because the defendants "work[] together to operate Tosh's commercial swine business[,]" knew that hog odors "can be intense," and nonetheless "entered into an agreement that requires the production of large volumes of odors," they could be found liable as coconspirators to cause any resulting harm, in this case, nuisance. (Pls.' Resp., 9-10, DN 382.) The record shows that the Tosh parties entered into SSAs with Ron and Heather Davis, under which the Davises agreed to not create a nuisance, abide by all applicable laws and regulations, and inject their waste rather than spread it in an effort to curb odors. The barns are properly permitted, and state regulators have not found the Davises in violation of any air-quality regulations or odor standards. The record shows the Defendants entered into a business arrangement to conduct hog operations that Plaintiffs allege causes them harm. A question of fact remains as to whether those operations have ultimately caused a substantial interference with Plaintiffs' use and enjoyment of their property. Such may support

recovery for nuisance, but not for a civil conspiracy. As noted above, Plaintiffs must show more than the joint intent to engage in conduct that ultimately results in a nuisance. Plaintiffs have failed to do so; thus, Defendants are entitled to summary judgment on this claim.

**VIII.   Plaintiffs' Claims Regarding Lela Green Road[18] Barns**

Ron and Heather Davis move for summary judgment on Plaintiffs' tort claims as they pertain to the barns located on Heather Davis's farm on Lela Green Road. The Davises argue that Plaintiffs' claims fail for a lack of causation. With the exception of Winford Ham, the named Plaintiffs live at least three miles from the Lela Green Road barns and within 1.25 miles of the Brewers Highway barns. Plaintiffs have not testified they attribute the odors causing their injuries to the Lela Green Road barns.[19] Although Plaintiffs' experts offer data regarding odors emitted by the Brewers Highway barns, their reports do not include data pertaining to the Lela Green Road barns. Plaintiffs do not contest these facts,[20] but contend that because the Lela Green Road barns are built to the same specifications as the Brewers Highway barns, "by inference, the manure and hog odors produced by the Brewers Highway Hog Barns can also be attributable to the Lela Green [Road] Hog Barns." (Pls.' Resp., 36, DN 378.) Furthermore, in its separate Opinion,[21] the Court has excluded Mary Clay's testimony regarding the effect of the Lela Green Road barns on Plaintiffs' properties based on a lack of foundation and insufficient data. Based on the foregoing evidence, a reasonable trier of fact could not find that Plaintiffs' injuries are caused

---

[18] The Lela Green Road barns have been otherwise referred to in this matter as the "Heather Davis barns."

[19] *See, e.g.*, D. Allen Depo., 33:2-5, June 29, 2010, DN 343-5; J. Powell Dep., 86:14-21, May 5, 2010, DN 343-5; J. Thompson Dep., 64:11-22, June 29, 2010, DN 343-5; K. Pearson Dep., 52:23-53:3, June 28, 2010, DN 343-5; K. Groves Dep., 35:11-14, July 14, 2011, DN 343-5 (not sure if Lela Green Road barns are causing odors); L. Thompson Dep., 41:9-15, June 29, 2010, DN 343-5 (lives 5 miles from the Lela Green Road barns and does not claim odors from those barns are affecting her home); M. Jordan Dep., 83:18-24 (does not claim to smell odors at home due to Lela Green Road barns).

[20] Plaintiffs note that their experts could not conduct source monitoring at the Lela Green Road barns because the barns were empty for cleaning during the time allotted for monitoring.

[21] Part I.B.2 of this Court's Opinion on the parties' *Daubert* motions addresses this testimony..

by the Lela Green Road barns. Thus, the Davises' motion for summary judgment is granted as to all of Plaintiffs' claims as to the Lela Green Road barns.

### IX.   **Eric Howell**

Eric Howell has moved for summary judgment for any liability based on the operation of his barns on Wilkins Road. Plaintiffs concede that Howell's barns do not cause any of their injuries. However, individual Plaintiffs Brenda Jordan, Kandis Jordan, Michael Jordan, and Winford Ham argue that the Davis/Howell Defendants may still be found liable in trespass, nuisance, negligence, and battery for the land application of hog manure near their properties.

Like their complaints regarding the operation of the Brewers Highway barns, Plaintiffs' complaints regarding the injection of manure are based on the odors the injection causes. Plaintiffs' temporary nuisance, trespass, negligence, and battery claims based on the odors caused by manure injection have the same failures, outlined exhaustively above, as those claims based on the odors caused by the Brewers Highway barns, but an issue of fact remains on these Plaintiffs' permanent nuisance claims. Although deciding this issue may be submitted to the jury, the Court is uncertain that the bi-annual injection of manure constitutes a permanent nuisance or whether these Plaintiffs have adequately quantified the damages attributable to the injection. Nonetheless, an issue of fact remains. Thus, Eric Howell's motion for summary judgment is denied as to the individual Plaintiffs' permanent nuisance claims but granted in all other respects.

### CONCLUSION

(1)   Defendant Eric Howell's motion for summary judgment, (DN 340), is DENIED IN PART AND GRANTED IN PART. The motion is DENIED as to Plaintiffs' individual permanent nuisance claims based on manure injection, and GRANTED in all other respects.

(2)  Defendants Ron and Heather Davis's motion for summary judgment, (DN 343), is DENIED IN PART AND GRANTED IN PART. The motion is DENIED as to Plaintiffs' permanent nuisance claims and GRANTED in all other respects.

(3)  The Davis/Howell Defendants' joint motion for summary judgment on Plaintiffs' water contamination claims, (DN 344), is GRANTED.

(4)  The Tosh Defendants' partial motion for summary judgment on Plaintiffs' negligence *per se* claims, (DN 347), is GRANTED.

(5)  The Tosh Defendants' partial motion for summary judgment on Plaintiffs' product liability claims, (DN 353), is GRANTED.

(6)  The Tosh Defendants' partial motion for summary judgment on Plaintiffs' civil conspiracy claims, (DN 355), is GRANTED.

(7)  The Tosh Defendants' partial motion for summary judgment on Plaintiffs' punitive damages claims, (DN 356), is GRANTED.

(8)  The Tosh Defendants' partial motion for summary judgment on Plaintiffs' battery claims, (DN 358), is GRANTED.

(9)  The Tosh Defendants' partial motion for summary judgment on Plaintiffs' trespass claims, (DN 359), is GRANTED.

(10) The Tosh Defendants' partial motion for summary judgment on Plaintiffs' nuisance claims, (DN 360), is GRANTED in part and DENIED in part. The motion is GRANTED as to temporary nuisance but DENIED as to permanent nuisance. The Court RESERVES RULING on Defendants' motion to decertify the class.

(11)  The Tosh Defendants' partial motion for summary judgment on vicarious liability, (DN 361), is GRANTED in part and DENIED in part. It is GRANTED as to Defendants Tosh Farms, LLC; Pig Palace, LLC; Shiloh Hills, LLC; Bacon By Gosh, LLC. These parties are DISMISSED from the law suit. The motion is DENIED as to Tosh Farms General Partnership; Tosh Pork, LLC; and Jimmy Tosh in his role as partner in Tosh Farms General Partnership.

(12)  The Plaintiffs' partial motion for summary judgment, (DN 363), is DENIED.

(13)  The Plaintiffs' motion for a permanent injunction, (DN 365), is DENIED AS MOOT.

(14)  The Tosh Defendants' partial motion for summary judgment on Plaintiffs' negligence claims, (DN 366), is GRANTED.

(15)  The Court RESERVES RULING on Plaintiffs' Motion to Amend / Correct the Scheduling Order to allow further discovery as to individual Plaintiffs' property damages, (DN 407).

IT IS SO ORDERED.


Date:


CC: Counsel