UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:09-CV-00121-TBR

TERRY POWELL, *et al.*                                                    Plaintiffs

v.

JIMMY TOSH, *et al.*                                                      Defendants


**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Plaintiffs' three Motions to Reconsider. (Docket Nos. 583; 584; 585.)

In their first Motion, Plaintiffs move the Court to reconsider that portion of the Court's Opinion and Order at Docket No. 536 in which the Court granted Defendants summary judgment relative to Plaintiffs' claims of punitive damages, negligence, and negligence *per se*.  (Docket No. 583.)  The Tosh Defendants[1] and the Howell and Davis Defendants[2] separately have responded, (Docket Nos. 594 & 592, respectively), and Plaintiffs have replied, (Docket No. 599).

In their second Motion, Plaintiffs move the Court to reconsider that portion of the Court's Opinion and Order at Docket No. 537 in which the Court excluded certain proposed expert testimony by Plaintiffs' experts Thomas Card and Neil Webster.

_____

[1] The "Tosh Defendants" include Jimmy Tosh; Tosh Farms, LLC; Tosh Farms General Partnership; Pig Palace, LLC; Shiloh Hills, LLC; Tosh Pork, LLC; and Bacon By Gosh, Inc.

[2] The "Howell and Davis Defendants" include Eric Howell, Ron Davis, and Heather Davis.  Although these Defendants variously and inconsistently (even by themselves) are referred to elsewhere in this matter as the "Farmer Defendants," the "Defendant Farmers," the "Howell/Davis Defendants," the "Producer Defendants," the "Davis and Howell Defendants," and the "Davis/Howell Defendants," for purposes of this Opinion, the Court will refer to these Defendants as the "Howell and Davis Defendants."

(Docket No. 584.)   The Tosh Defendants and the Howell and Davis Defendants separately have responded, (Docket Nos. 589 & 590, respectively), and Plaintiffs have replied, (Docket No. 600).

In their third Motion, Plaintiffs move the Court to reconsider that portion of the Court's Opinion and Order at Docket No. 536 in which the Court granted Defendants summary judgment on Plaintiffs' temporary nuisance claims.  (Docket No. 585.)  The Tosh Defendants and the Howell and Davis Defendants separately have responded, (Docket Nos. 593 & 591, respectively), and Plaintiffs have replied, (Docket No. 601). These matters are now fully briefed and ripe for adjudication.

## BACKGROUND

The facts pertinent to the Plaintiffs' claims in this matter were recited in full in the Court's prior Opinion addressing collectively Defendants'[3] various motions for summary judgment.  (*See* Docket No. 536, at 3-7.)  Similarly, the facts pertinent to the Court's decision regarding the admissibility of Plaintiffs' proposed experts Neil Webster and Thomas Card were discussed in the Court's prior Opinion addressing Defendants' various motions *in limine*.  (*See* Docket No. 537, at 25-52.)  In the interest of brevity, the Court will not recite the factual background again, but instead incorporates by reference its prior recitations.

---

[3] For purposes of this Opinion, "Defendants," unless otherwise noted, will refer collectively to the Tosh Defendants and the Howell and Davis Defendants.

STANDARD

"District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008). "A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991). Although the Federal Rules of Civil Procedure do not provide expressly for "motions for reconsideration," courts generally construe such motions as motions to alter or amend a judgment under Rule 59(e). *E.g.*, *Moody v. Pepsi-Cola Metro. Bottling Co.*, 915 F. 2d 201, 206 (6th Cir. 1990); *Taylor v. Colo. State Univ.*, 2013 WL 1563233, at *8-9 (W.D. Ky. Apr. 12, 2013).

The Sixth Circuit has consistently held that a Rule 59 motion should not be used either to reargue a case on the merits or to reargue issues already presented, *see Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)), or otherwise to "merely restyle or rehash the initial issues," *White v. Hitachi, Ltd.*, 2008 WL 782565, at *1 (E.D. Tenn. Mar. 20, 2008) (internal quotation marks and citation omitted). "It is not the function of a motion to reconsider arguments already considered and rejected by the court." *Id.* (citation omitted). As another district court in this Circuit put it, "Where a party views the law in a light contrary to that of this Court, its proper recourse is not by way of a motion for reconsideration but appeal to the Sixth Circuit." *Hitachi Med. Sys. Am., Inc. v. Branch*, 2010 WL 2836788, at *1 (N.D. Ohio July 20, 2010) (internal quotation marks and citations omitted). Accordingly, the Sixth Circuit instructs that a motion for reconsideration should only be granted on four grounds: "Under Rule 59, a court may alter or amend a judgment based on: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620

(6th Cir. 2005)).  Furthermore, because there is an interest in the finality of a decision, this Court and other district courts have held that "[s]uch motions are extraordinary and sparingly granted." *Marshall v. Johnson*, 2007 WL 1175046, at *2 (W.D. Ky. Apr. 19, 2007) (citing *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995)); *accord Rottmund v. Cont'l Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992).

## DISCUSSION

I.    **Plaintiffs' Motion to Reconsider Relative to Plaintiffs' Claims of Negligence and Negligence *Per Se*, and for Punitive Damages, (Docket No. 583)**

In its prior Opinion, the Court granted Defendants summary judgment on Plaintiffs' negligence and negligence *per se* claims, finding that Plaintiffs had failed to prove they suffered injuries to support those claims.  (Docket No. 536, at 23-27.)  The Court also granted Defendants summary judgment on Plaintiffs' gross negligence and punitive damages claims, finding that "[t]he undisputed facts do not support a finding that Defendants failed to exercise even slight care."  (Docket No. 536, at 27.)  Plaintiffs now move the Court to reconsider those conclusions, arguing that the Court erred (1) by failing to recognize that punitive damages were still available for their nuisance claims, and (2) by determining they had not put forth sufficient evidence of damages to show a genuine issue of material fact on their claims of negligence and negligence *per se*.  (*See* Docket No. 583-1.)

### A. **Plaintiffs' claim for punitive damages can proceed based on their remaining nuisance claims.**

As to their punitive damages claims, Plaintiffs argue that the Court erred by failing to recognize that, by Kentucky statute, punitive damages are available for their

remaining claim of permanent nuisance.  Kentucky Revised Statutes § 411.560(4) does provide that punitive damages are recoverable if a claimant recovers damages for private nuisance.  In this regard, the Court agrees that its prior decision was in error and that punitive damages are recoverable on Plaintiffs' permanent nuisance claims.  Thus, in light of the clear statutory law on this point, Plaintiffs have presented a viable basis for reconsideration under the applicable standard for a Rule 59(e) motion.  *See, e.g.*, *Leisure Caviar*, 616 F.3d at 615 ("Under Rule 59, a court may alter or amend a judgment based on: '(1) a clear error of law . . . .'")

However, the Court's inquiry into the propriety of its previous decision does not end there.  Although Kentucky law permits recovery of punitive damages for private nuisance, a claimant must still show, by clear and convincing evidence, that a defendant acted with "oppression," "fraud," or "malice."  Ky. Rev. Stat. § 411.184.  "Malice," for purposes of punitive damages, is now equated with "gross negligence," which is defined as "the absence of slight care" or "reckless indifference or disregard for the rights of others."  *See City of Middlesboro v. Brown*, 63 S.W.3d 179, 181 (Ky. 2001); *see also Williams v. Wilson*, 972 SW.W.2d 260 (Ky. 1998) (holding unconstitutional the subjective awareness standard of "malice" in § 411.184(1)).

Having previously noted that "[t]he undisputed facts do not support a finding that Defendants failed to exercise even slight care," the Court questions whether Plaintiffs have put forth sufficient evidence to establish a genuine issue of material fact that Defendants' acts breached the statutory threshold of oppressive, fraudulent, or recklessly indifferent conduct.  In the interest of appropriate caution, the Court finds that this issue need not be decided definitively at this juncture.  Rather, the question

whether Plaintiffs have put forth sufficient evidence to instruct the jury on punitive damages may be raised and decided at trial after the close of Plaintiffs' proof. Accordingly, the Court will vacate its prior grant of summary judgment in Defendants' favor on Plaintiffs' punitive damages claim.  Plaintiffs may recover punitive damages in accordance with Ky. Rev. Stat. § 411.560(4) if they recover damages on their remaining nuisance claims and if they prove that Defendants' "conduct in engaging in the specific activity which is alleged to be the nuisance meets or exceeds the standards set forth in [§] 411.184."  For these reasons, the Court will grant Plaintiffs' Motion to Reconsider relative to their claim for punitive damages.

### B. Summary judgment was, and remains, appropriate on Plaintiffs' negligence and negligence *per se* claims.

As to their claims of negligence and negligence *per se*, Plaintiffs argue that "the Court misinterpreted the proof required to establish damages under Kentucky negligence law," and that they have put forth sufficient evidence demonstrating the physical and emotional harm suffered as a result of the odor emitted from Defendants' hog barns.  (Docket No. 583-1, at 6-7.)  Here, Plaintiffs reason that "the Court's application of *Osborne v. Keeney*, 2012 WL 6634129 (Ky. 2012)[,] to Plaintiffs' negligence claims has caused manifest injustice."[4]  (Docket No. 583-1, at 5.)  The Kentucky Supreme Court decided *Osborne* December 2012 after briefing was

---

[4] Though styled on the ground of "manifest injustice," Plaintiffs' arguments actually sound more in terms of "an intervening change in controlling law," which is also a proper basis for a Rule 59(e) motion to reconsider.  *See Leisure Caviar*, 616 F.3d at 615.

completed on the underlying motions for summary judgment in this matter.[5]  In its prior

Opinion, the Court referenced the *Osborne* decision in a single citation, stating:

> Plaintiffs have also failed to present personal injuries to support a negligence claim. First, all but one Plaintiff acknowledge they have suffered no physical harm as a result of the odors from the Defendants' barns. Although some Plaintiffs recount mental or emotional distress as a result of the odors, none have sought or received treatment or counseling and none present medical proof in support of their distress claims. This is insufficient to support a negligence cause of action in Kentucky. *See Osborne v. Keeney*, 2012 WL 6634129, at *9 (Ky. Dec. 20, 2012) ("Distress that does not significantly affect the plaintiffs [sic] everyday life or require significant treatment will not suffice. And a plaintiff claiming emotional distress damages must present expert medical or scientific proof to support the claimed injury or impairment").

(Docket No. 536, at 25 (footnote omitted).)

Plaintiffs now contend that "the holding in *Osborne* is not applicable here, because that case dealt only with the damages for negligent infliction of emotional distress, a separate cause of action which has always required greater scrutiny than other negligence claims." (Docket No. 583-1, at 8.)  Plaintiffs further contend that because *Osborne* applies retroactively, "the Court should allow Plaintiffs additional time to comply with its new requirements for expert testimony, rather than granting summary judgment for failure to comply with a requirement that did not exist under Kentucky law at the time the issue was submitted to the Court."  (Docket No. 583-1, at 9.) Despite *Osborne*'s impact on emotional distress claims and damages related thereto, the

---

[5] The Court notes that the opinion in *Osborne* is not final as there remains a petition for rehearing yet to be ruled upon by the Kentucky Supreme Court.  Nevertheless, this Court is satisfied that the decision in that case represents the clear direction of the Kentucky Court relative to emotional distress claims, and will rely upon it as such.

reasoning underlying this Court's prior conclusion that summary judgment was warranted on Plaintiffs' negligence and negligence *per se* claims remains unaffected.

In *Osborne*, the Kentucky Supreme Court held that "the impact rule is no longer the rule of law in Kentucky" where a plaintiff seeks to recover for claims involving emotional distress.[6]   2012 WL 6634129, at *13.   The Kentucky Court went on to conclude that: "these cases should be analyzed under general negligence principals. That is to say that the plaintiff must present evidence of the recognized elements of a common law negligence claim . . . ." *Id.* at *9.  The Court further explained:

> . . . . [T]o ensure claims [for emotional distress] are genuine . . .
> recovery should be provided only for "severe" or "serious"
> emotional injury.  A "serious" or "severe" emotional injury occurs
> where a reasonable person, normally constituted, would not be
> expected to endure the mental stress engendered by the
> circumstances of the case.   Distress that does not significantly
> affect the plaintiff[']s everyday life or require significant treatment
> will not suffice.   And a plaintiff claiming emotional distress
> damages must present expert medical or scientific proof to support
> the claimed injury or impairment.

*Id.* (footnotes omitted).

This Court reads *Osborne* principally as abolishing the physical-impact rule and, in its stead, imposing a "seriousness" or "severity" requirement.  The Kentucky Court expressly characterized this requirement as one that *significantly affects the plaintiff's life* or *requires significant treatment*.  Regardless of *Osborne*'s effect on the physical-impact rule or the need for expert proof, Plaintiffs here have neither alleged nor put forward any evidence that their alleged emotional distress has required significant

---

[6] Although both Plaintiffs and Defendants here seem to read *Osborne* as applying specifically to a cause of action for "negligent infliction of emotional distress" as opposed to an  "ordinary negligence" claim, the Kentucky Supreme Court did not once use the phrase "negligent infliction of emotional distress" in the text of its opinion.  *See Osborne*, 2012 WL 6634129, at *1-15.

treatment.   As the Court noted in its prior Opinion, "Although some Plaintiffs recount mental or emotional distress as a result of the odors, none have sought or received treatment or counseling."  (Docket No. 536, at 25 (footnote omitted).)    The Kentucky Court's express purpose in imposing the serious/severe requirement was "to ensure claims are genuine."  2012 WL 6634129, at *9.  It follows that a genuine emotional distress injury is one that necessarily requires significant treatment.  Here, no Plaintiff has sought significant treatment—in fact, no Plaintiff has sought *any* treatment.  To permit Plaintiffs time to seek such treatment now, after the fact and to substantiate their claims purely for purposes of litigation, would fly against *Osborne*'s stated objective of vetting the genuineness of alleged emotional distress injuries.   Plaintiffs' pleas for additional time to comply with this requirement are, therefore, neither persuasive nor well-founded.  Because Plaintiffs have failed to establish an essential element of their negligence and negligence *per se* claims,[7] summary judgment remains appropriate.  *See M&T Chems., Inc. v. Westrick*, 525 S.W.2d 740, 741 (Ky. 1974) (holding that the failure to establish any one of the requisite elements is fatal to a negligence claim).

Finally, Plaintiffs argue that the Court should reconsider its prior Opinion "because Plaintiffs have presented sufficient evidence of physical harm."  (Docket No. 583-1, at 7.)  In its previous decision, the Court wrote:

---

[7] As noted in its prior Opinion, the Court need not address separately Plaintiffs' negligence and negligence *per se* claims:

"[N]egligence *per se* is merely a negligen[ce] claim with a statutory standard of care substituted for the common law standard of care."  *Pile v. City of Brandenburg*, 215 S.W.3d 36, 41 (Ky. 2006).  Indeed, "the only discernible difference between common-law negligence and negligence per se is 'how they are proved.'"  *Stivers v. Ellington*, 140 S.W.3d 599, 601 (Ky. Ct. App. 2004) (quoting 57A Am. Jur. 2d *Negligence* § 687 (2004)).  Therefore, just as in ordinary negligence claims, causation and injury must still be proven in negligence *per se* claims.  *Id.*

(Docket No. 536, at 24.)

> [T]he only Plaintiff who claims to suffer from physical symptoms as a result of the odors has offered no proof as to causation. Terry Powell testified that he suffers from a runny nose, congestion, and has vomited twice because of the odors from the Ron Davis barns. However, Powell has not sought treatment from a doctor for these medical problems. Furthermore, he presents no testimony linking such commonplace ailments to the presence of hog odors. Thus, Powell has not proven causation, and his claims in negligence must fail.

(Docket No. 536, at 26 (footnote and internal citations omitted).)   In reaching that conclusion, the Court relied upon two recent decisions, one by this Court and the other by the Eastern District of Kentucky.   In the first, *Bell v. DuPont Dow Elastomers, LLC*, this Court held, "Though Plaintiffs have complained that the smell makes them ill and that they suffer physical side effects, none have produced any medical evidence of illness or injury."  640 F. Supp. 2d 890, 897 (W.D. Ky. 2009).  In the second, *Adams v. Cooper Industries, Inc.*, the Eastern District held that a plaintiff alleging harm from a toxic substance "must prove both general and specific causation: that a particular toxic substance is capable of causing [the] injury, and that the toxic substance did, in fact, cause the injury.  Both elements of causation require scientific assessments that must be established through expert testimony."   2012 WL 2339741, at *1 (internal citation omitted) (citing *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676-77 (6th Cir. 2011)).

Plaintiffs offer no viable basis for altering the Court's prior conclusion in this regard.   Instead, Plaintiffs merely offer the same arguments and evidence previously considered and rejected by this Court.  Such is not the proper purpose of a Rule 59(e) motion to reconsider. *See White*, 2008 WL 782565, at *1 ("It is not the function of a motion to reconsider arguments already considered and rejected by the court.").

* * *

For these reasons, the Court will grant Plaintiffs' Motion to Reconsider in regard to their claim for punitive damages but deny their Motion in regard to their negligence and negligence *per se* claims.  (Docket No. 585.)

## II.   Plaintiffs' Motion to Reconsider Relative to Plaintiffs' Temporary Nuisance Claims, (Docket No. 585)

In its prior Opinion, the Court determined that Plaintiffs had not met the burden of proof necessary to proceed with their temporary nuisance claims and, therefore, granted summary judgment in favor of Defendants on those claims.  (*See* Docket No. 536, at 17-19.)   Specifically, the Court found that Plaintiffs had not produced the requisite proof as to the diminution in the value of use, which is the necessary measure of damages for a temporary nuisance claim under Kentucky law.  (Docket No. 536, at 17-18.)   The Court noted that although they "failed to address this issue in their response," some Plaintiffs had testified how the odors had affected the use of their properties.  (Docket No. 536, at 18.)   But, in relying on this Court's precedent, the Court nonetheless concluded that Plaintiffs had failed to introduce a tangible figure from which the value of the use can be deduced.  (Docket No. 536, at 18 (citing *Dickens v. Oxy Vinyls, LP*, 641 F. Supp. 2d 859, 866 (W.D. Ky. 2009)).)  Plaintiffs now move the Court to reconsider its prior grant of summary judgment on their temporary nuisance claims.

### A.   Plaintiffs present no viable argument under the applicable standard for a Rule 59(e) motion that would justify reconsideration.

Plaintiffs argue that the several Plaintiffs' testimony regarding the effect of odor on the use of their properties "was sufficient proof of injury to withstand a motion for summary judgment."  (Docket No. 585-1, at 3.)   In support, Plaintiffs now attach

excerpts of deposition testimony in which several Plaintiffs testified as to the value of his or her loss of use from temporary nuisance.  (*See* Docket No. 585-2.)  However, Plaintiffs make no argument under the applicable standard mandated by this Circuit for a Rule 59(e) motion—*i.e.*, that that there was or has been "'(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'"  *Leisure Caviar*, 616 F.3d at 615 (quoting *Intera Corp.*, 428 F.3d at 620).  For this reason alone their Motion must be denied.

In regard to the first permissible ground for reconsideration, the closest Plaintiffs come to arguing that the Court made a "clear error of law" is their discussion of Ky. Rev. Stat. §§ 411.560 & 411.570.  There, Plaintiffs point out that although § 411.560(3) prohibits certain damages (such as annoyance or discomfort) for private nuisances, § 411.570 goes on to limit § 411.560 as not to be construed as repealing any Kentucky common law relative to nuisance.  (*See* Docket No. 585-1, at 4.)  But Plaintiffs' argument misses the point because the Court's ruling was not based on this statute, either in whole or in part.  In fact, the Court even acknowledged Kentucky case law that specifically recognized discomfort as a properly considerable element of damages.  (Docket No. 536, at 18 (citing *Radcliff Homes, Inc. v. Jackson*, 766 S.W.2d 63, 66 (Ky. Ct. App. 1989); *Price v. Dickson, Ky.*, 317 S.W.2d 156, 157 (Ky. 1958)).)  Instead, the Court relied on its own precedent applying the Kentucky Supreme Court's decision in *Adams Construction Co. v. Bentley*, 335 S.W.2d 912, 913 (Ky. 1960), to conclude:

> In any event, "Plaintiff[s] must introduce a 'tangible figure from which the value of the use can be deduced,' otherwise the valuation is pure speculation."  Plaintiffs have not provided the requisite proof regarding any diminution in the value of use and, thus, have not met their burden of proof regarding temporary nuisance.

(Docket No. 536, at 18 (internal citations omitted) (quoting *Dickens*, 631 F. Supp. 2d at 866).) Therefore, Plaintiffs have neither raised, nor does the Court conceive, any viable argument why there was a "clear error of law" in concluding that Plaintiffs had failed to meet their burden of proof.

Relative to the second permissible ground—"newly discovered evidence"—Plaintiffs attach to their instant Motion deposition testimony by several of the named Plaintiffs.  Those depositions all were taken during or between July and September 2011, which was at least one year prior to the filing of Defendants' motions for summary judgment.  (*See* Docket Nos. 360; 387; 585-2.)  But in responding to those motions, Plaintiffs did not attach this evidence or cite to it elsewhere in the record, (*see* Docket No. 387), despite that it was available to them for over a year.  "'Newly discovered evidence' is that which is truly newly discovered or . . . could not have been found by due diligence."  *McClendon v. B&H Freight Servs., Inc.*, 910 F. Supp. 364, 365 (E.D. Tenn. 1995) (citation and internal quotation marks omitted). Thus, the evidence Plaintiffs now put forward is, without a doubt, not "newly discovered."

The Court further notes that, in their motion for summary judgment, Defendants specifically challenged Plaintiffs as having failed to produce evidence quantifying the loss of use of their property. Yet, as the Court remarked in its prior Opinion, Plaintiffs "failed to address this issue in their response."  (Docket No. 536, at 18.)  Federal Rule of Civil Procedure 56 makes clear that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: . . . citing to particular parts of materials in the record, including depositions . . . and or other materials; . . . .
>
>      . . . .

> The court need consider only the cited materials . . . .

Fed. R. Civ. P. 56(c)(1)(A), (c)(3).  The Sixth Circuit has repeatedly reaffirmed that, in the summary judgment context, a district court is not expected to canvass the record in search of evidence on behalf of the party bearing the burden of production.  *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008) ("Importantly, '[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'" (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989))).    In essence, Plaintiffs now seek to introduce evidence that was available to them at the time they responded to Defendants' motions for summary judgment—evidence which they then did not produce, reference, or even mention.  But, as Rule 56(c) and the law of this Circuit make clear, it was Plaintiffs' burden to cite, produce, or otherwise point to this evidence in responding to Defendants' motions for summary judgment.  Accordingly, the Court finds no viable argument for reconsideration on the basis that the deposition testimony now put forth by Plaintiff constitutes newly discovered evidence.

Plaintiffs make, and the Court can conceive, no argument that there was an "intervening change in controlling law."  Thus, this basis for reconsideration need not be addressed further here.

Finally, the fourth permissible ground for reconsideration, "manifest injustice," is defined as "[a] direct, obvious, and observable error in a trial court, such as a defendant's guilty plea that is involuntary or is based on a plea agreement that the prosecution has rescinded."  Black's Law Dictionary 1048 (9th ed. 2009). Plaintiffs make no argument (nor even mention the term) why reconsideration is needed to

prevent "manifest injustice"; thus, the Court finds no merit for reconsideration on this basis.

Ultimately, Plaintiffs seek no more than to reargue issues previously considered and adjudicated, and, in doing so, present evidence that they could have presented before but did not. Quite simply, everything in Plaintiffs' instant Motion either was argued or could have been argued before judgment was entered. Such is not the proper function of a motion to reconsider under Rule 59(e). *See Whitehead*, 301 F. App'x at 489 (6th Cir. 2008); *Engler*, 146 F.3d at 374; *White*, 2008 WL 782565, at *1. For these reasons, and because Plaintiffs' Motion is not founded on any of the four proper grounds for granting a motion to reconsider, the Court will deny Plaintiffs' Motion for Reconsideration relative to their temporary nuisance claims.

## B. Even if Plaintiffs had stated proper grounds for reconsideration, summary judgment would still be appropriate on their temporary nuisance claims.

As a final note, even assuming that Plaintiffs had stated a viable argument for reconsideration and that Kentucky law would allow recovery for annoyance and discomfort damages in a nuisance action, summary judgment would still be appropriate for at least two reasons unrelated to the propriety of reconsideration. First, Plaintiffs have not presented evidence that the alleged nuisance can be abated at a reasonable cost.[8] The Court previously granted Defendants' motions to exclude the testimony of Plaintiffs' experts regarding biofilters and other alternative methods of odor control, methods which Plaintiffs argue could reasonably abate the alleged nuisance here. For the reasons discussed *infra* Part III of this Opinion, the Court's prior decision to exclude

---

[8] A temporary nuisance requires a showing that the nuisance in question can be abated at a reasonable expense to eliminate the offensive condition. *See Lynn Mining Co. v. Kelly*, 394 S.W.2d 755, 758 (Ky. 1965).

that evidence will not be altered.  Thus, even if Plaintiffs had provided the requisite proof of diminution in value of use, they still cannot present a material issue of fact as to whether the alleged nuisance can be abated at a reasonable cost.

Second, Plaintiffs' testimony regarding their loss-of-use valuations would not suffice to meet their burden of proof.  As stated above, Plaintiffs must introduce a "tangible figure from which the value of the use can be deduced," *Adams Constr.*, 335 S.W.2d at 913, which ordinarily necessitates an expert opinion, *see Dickens*, 631 F. Supp. 2d at 866-67; *see also Brockman v. Barton Brands, Ltd.*, 2009 WL 4252914, at *4 (W.D. Ky. Nov. 25, 2009).  As this Court has noted, the "purpose of this requirement is to impose an objective criteria upon an otherwise rather subjective tort."  *Brockman*, 2009 WL 4252914, at *4.  Here, most of the named Plaintiffs appear to have placed a specific value on their loss of use; however, they have offered no objective criteria how those valuations were made.[9]  Thus, without deciding whether the determination of loss-of-use damages necessarily requires an expert opinion, the Court finds that the Plaintiffs' conclusory valuations are precisely the sort of "vague, non-expert testimony" that this Court found insufficient in *Brockman* as evidence of damages.  *Id.*  Therefore, even assuming Plaintiffs had produced tangible figures of their loss-of-use damages, those conclusory, unexplained, and unsubstantiated valuations simply do not amount to sufficient evidence of damages for Plaintiffs' temporary nuisance claims.

---

[9] Plaintiffs do state that the specific value of their loss of use for temporary nuisance was calculated by applying a 10% capitalization rate to the permanent damage as established by their property-valuation expert Mary Clay. (Docket No. 585-1, at 3.)  Plaintiffs do not, however, elaborate on the origin of this formula or explain their calculations using it.  In fact, most of the named Plaintiffs stated in their depositions that the loss-of-use valuations to which they testified were calculated by or with their attorneys, and several even assumed Clay had made these calculations.  (*See* Docket No. 585-2.)  To be clear, Clay's expert report addresses the *diminution in fair market value* of Plaintiffs' properties, not the *loss-of-use value*.  Regardless, merely assigning a vague formula to an expert's valuations of a separate measure of damages to then produce a figure does not, absent some sort of explanation, demonstrate objective criteria by which the Plaintiffs' loss-of-use valuations were made.

\* \* \*

For these reasons, the Court will deny Plaintiffs' Motion to Reconsider relative to their temporary nuisance claims.  (Docket No. 585.)

### III.   Motion to Reconsider Exclusion of Plaintiffs' Expert Witnesses Neil Webster and Thomas Card, (Docket No. 584)

In the Court's prior Opinion addressing the parties' various motions to exclude the opinions and testimony of the several expert witnesses identified in this case, the Court considered, at some length, the admissibility of Plaintiffs' experts Neil Webster and Thomas Card.  (*See* Docket No. 537, at 25-52.)  Plaintiffs now move the Court to reconsider its ruling excluding Card's proposed testimony in its entirety and excluding all of Webster's proposed expert opinions save for his testimony concerning odor measurements.

#### A. The Court thoroughly considered the admissibility of Plaintiffs' experts under Fed. R. Evid. 702 & 703 and *Daubert* in its prior Opinion.

In its prior Opinion, the Court granted Defendants' motions to exclude Webster's expert testimony regarding alternative methods to control odors, including the application of his proposed biofilter, as well as his proposed testimony relative to the University of Kentucky Swine Facility.  (Docket No. 537, at 34-35.)  After reviewing Webster's *curriculum vitae*, expert report, and deposition testimony, the Court expressed concern whether Webster is properly qualified to render his proposed expert opinions in this case.  The Court reasoned that Webster's proposed testimony regarding the U.K. Swine Facility was "properly excludable because he has no personal knowledge of that facility's operations or its methods, and has identified no basis for his assertions relative to that facility."  (Docket No. 537, at 30-31.)  The Court further found

that Webster's opinions regarding the use of scrapers, covered lagoons or tanks, and anaerobic digesters as alternative methods to control odors also were properly excludable: "[T]he Court can neither conclude that Webster's opinions regarding the first three proposed alternatives are the product of reliable principles and methods, reliably applied to the facts of this case, nor that he has a reliable basis in his professional knowledge and experience to offer such opinions." (Docket No. 537, at 33.)   Finally, the Court found that Webster's testimony regarding his remaining proposed alternative, biofilters, must also be excluded, reasoning that "[u]ltimately, Webster's questionable qualifications in this area do little to shore up the questionable reliability of his proposed expert testimony [regarding biofilters]." (Docket No. 537, at 34.)

Also in that Opinion, the Court granted Defendants' motions to exclude the proposed testimony and opinions of Plaintiffs' expert Card. (*See* Docket No. 537, at 35-52.)   Specifically, the Court found that "Card's conclusions as to Defendants' awareness, intent, choices, and knowledge are, quite plainly, state-of-mind opinions," which, thus, amounted to impermissible speculation warranting exclusion. (Docket No. 357, at 36-39.)  The Court further addressed at length the reliability of Card's proposed testimony.  In that regard, the Court concluded that Card's proposed testimony lacked a sufficiently reliable foundation and did not satisfy the standards of Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  The Court also found that Card's testimony raised a number of the "[r]ed flags that caution against certifying an expert" recently outlined by the Sixth Circuit in *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012).  (Docket No. 357, at 40-45.)

Then, after thoroughly considering and discussing Card's use of, and reliance upon, the Minnesota OFFSET model, the Court determined that Card's proposed testimony in this regard was not admissible:  "Upon reviewing Card's expert report, declaration, and deposition testimony, along with the relevant scholarly literature, the Court cannot conclude that the Minnesota OFFSET model is sufficiently reliable under *Daubert* and Rule 702."  (Docket No. 537, at 45-48.)

> **B.  Plaintiffs present no viable argument under the applicable standard for a Rule 59(e) motion that would justify reconsideration.**

In their instant Motion, Plaintiffs argue that the Court's prior decision excluding Webster and Card's opinions was in error for several reasons: (1) the Court erred in considering the opinions of Card and Webster in isolation rather than considering the reliance of each upon the opinions of the other and upon the opinions of Plaintiffs' expert Eric Winegar; (2) the Court "misperceived" Card's use of the Minnesota OFFSET model by failing to take into account his experience and reliance on the opinions of Plaintiffs' other experts Winegar and Webster; (3) the Court also "misperceived" Webster's testimony "which relied upon articles in trade publications intended to show that biofilters are commercially available"; and (4) the Court erred by not considering Webster's supplemental report.  (*See* Docket No. 584-1, at 4-5.)  In addition, Plaintiffs insist that because Defendants' expert Richard Burns mentioned the use of biofilters in his deposition testimony, Plaintiffs should be allowed to cross-examine Burns and to offer Webster and Card as rebuttal to Burns' testimony.  (Docket No. 584-1, at 3.)

None of these arguments satisfy the standard applicable to a Rule 59(e) motion; for this reason alone Plaintiffs' Motion to Reconsider must be denied.[10] First, Plaintiffs identify no clear error of law. None of the four authorities relied upon in the argument portion of their Motion are binding on this Court, and, even if they were, none establish a clear error of law here. Second, Plaintiffs neither identify nor argue that there has been a change in the applicable law. Third, Plaintiffs do not point to any newly discovered evidence. Fourth and finally, Plaintiffs do not argue that an alternate outcome is required to avoid manifest injustice. Instead, Plaintiffs' Motion does little more than argue that the Court erred, more or less because Plaintiffs disagree with the Court's conclusions. As another district court in this Circuit put it, a plaintiff may not simply "reargue its position in the hope that the court will change its mind." *Al-Sadoon v. FISA Madison Fin. Corp.*, 188 F. Supp. 2d 899, 902 (M.D. Tenn. 2002). Because the arguments put forth by Plaintiffs provide the Court no proper basis for altering its prior decision, their Motion to Reconsider must be denied.

### C. Even if Plaintiffs had stated viable grounds for reconsideration, exclusion would still be warranted under Fed. R. Evid. 702 & 703 and *Daubert*.

Moreover, even if Plaintiffs had satisfied the standard for reconsideration under Rule 59(e), they still would not be entitled to the relief they seek. Plaintiffs' first challenge—that the Court erred by considering the opinions of Card and Webster in isolation rather than considering the reliance of each upon the opinions of the other and upon Winegar—is without merit. Here, Plaintiffs present a somewhat circular argument

---

[10] In light of the Court's decision *supra* Part II to deny Plaintiffs' Motion to Reconsider relative to their temporary nuisance claims, the admissibility of either Webster or Card's proposed testimony regarding alternative odor control methods may be moot or irrelevant insofar as those opinions would go to show that the alleged nuisance could be abated.

that, essentially, Card shores up Webster's shortcomings, Webster's shores up Card's shortcomings, and Winegar shores up both of them.  The Court agrees with the Plaintiffs' proposition that an expert witness may rely on another expert's opinions where those opinions are the type reasonably relied upon by experts in a particular field. *See* Fed. R. Evid. 703; *Logan v. Cooper Tire & Rubber Co.*, 2011 WL 3267891, at *4 (E.D. Ky. July 29, 2011).  However, the Court did not, as Plaintiffs contend, fail to consider Card and Webster's reliance on one another's opinions and on those of Winegar.  Rather, the Court considered in detail the reliability of the particular proposed testimony and expert opinions that Card and Webster intended to offer and analyzed whether that particular testimony or opinion was sufficiently reliable so as to be admissible.  After discussing those opinions at some length, the Court then determined that exclusion was proper.  Contrary to Plaintiffs' position, the deficiencies in those experts' qualifications and the reliability of their proposed testimony are not cured merely by aggregating their qualifications and experience.  Therefore, the Court concludes, as it did before, that those opinions and testimony previously excluded still warrant exclusion on reconsideration.

Plaintiffs' second and third challenges argue that the Court "misperceived" Card's use of the Minnesota OFFSET model by failing to take into account his experience and his reliance on the opinions of Plaintiffs' other experts, Winegar and Webster, and that the Court also "misperceived" Webster's testimony "which relied upon articles in trade publications intended to show that biofilters are commercially available."  (Docket No. 584-1, at 5.)  Plaintiffs' argument regarding Card's use of the Minnesota OFFSET model attempts to distinguish that model's use "to determine the

potential for odor problems" from its use "to determine actual odor problems." (Docket No. 584-1, at 10.) This argument ignores the Court's conclusion that the OFFSET model is unreliable and does not meet the standards of Rule 702 and *Daubert*. Plaintiffs' argument regarding Webster's reliance on various articles published in the *National Hog Farmer*, a nonacademic, non-peer reviewed swine-industry publication, is similarly unpersuasive. Despite asserting this challenge to the Court's prior Opinion, Plaintiffs do not elaborate on or further explain this contention. Accordingly, the Court finds no basis to alter its prior decision based on these arguments.

For their fourth challenge, Plaintiffs fault the Court for not considering Webster's supplemental report. In its prior Opinion, the Court denied as moot the Defendants' respective motions to strike or exclude Webster's supplemental report. (Docket No. 537, at 80.) In doing so, the Court referenced Part IV of that Opinion, which addressed the admissibility of Webster's testimony. (Docket No. 537, at 80.) In his four-page supplemental report, Webster proposes certain preliminary design criteria for a biofilter. He also includes a cost estimate based on a design using railroad ties and bird netting that his company had used in the past. (Docket No. 365-2.) But those design criteria were not produced by Webster but instead by Richard Nicolai,[11] a retired professor from South Dakota State University whom Webster says he was "put in touch with" by Plaintiffs' counsel. (Docket No. 365-2, at 2.) Webster goes on in his supplemental report to state:

---

[11] Nicolai has not been identified as an expert in this case.

> I cannot attest to the effectiveness of Dr. Nicolai's approach . . . .
>
> . . . If all agree to pursue this alternative approach for treating odors from the barns and it is designed and put in place, I suggest that it be considered experimental, subject to modification and improvement, if required.  This design approach is a preliminary concept and should be confirmed by Dr. Nicolai, following a site visit.  Then, Dr. Nicolai can offer further suggestions.

(Docket No. 365-2, at 3 (emphasis added).)

Much as Defendants argued in their motions to strike or exclude Webster's supplemental report, the Court has concerns whether this report is nothing more than a vessel for Plaintiffs to deliver, via Webster, the expert opinions of Nicolai, an undisclosed expert in this matter.  Indeed, it appears that the bulk of the opinions in Webster's supplemental report are in fact Nicolai's and not Webster's.   Regardless, Webster expressly states in that report that he "cannot attest to the effectiveness" of Nicolai's recommended approach, that he considers this approach "experimental," and that any design ultimately would need to be confirmed by Nicolai.  Thus, Webster's supplemental report does nothing to remedy the Court's concerns regarding his qualifications and the reliability of his proposed expert testimony—if anything, Webster's supplemental report buttresses the Court's prior conclusion that his proposed expert opinions regarding biofilters and alternative odor-control methods are not admissible.  Accordingly, the Court finds Plaintiffs' fourth challenge without merit.

Finally, Plaintiffs make much of the fact that Defendants' expert Robert Burns apparently was the first expert in this case to mention the use of biofilters as a potential odor-control method.  (Docket No. 584-1, at 3.)  According to Plaintiffs, because Burns "opened this door on May 15, 2011, the Plaintiffs should be afforded the right to

introduce their expert opinion testimony about the feasibility of retrofitting the Ron Davis barn with biofilters to abate the odor nuisance - and the Plaintiffs should be afforded the opportunity to cross-examine Dr. Burns and offer rebuttal testimony to that of Dr. Burns concerning biofilters." (Docket No. 584-1, at 3.) Certainly, Plaintiffs will have the opportunity to cross-examine Burns if and when he testifies at trial. But what Plaintiffs actually seem to argue is that they should be allowed to prove an essential element of their temporary nuisance claims—abatement—by way of rebuttal testimony. This position is untenable for several reasons. For one, the Court's conclusions regarding the qualifications of Plaintiffs' experts and the reliability of their expert testimony are equally applicable for rebuttal purposes. That is, if an expert's testimony is excluded based on his lack of qualifications or because the Court finds it unreliable, that same testimony does not somehow become admissible for purposes of rebuttal. Additionally, testimony is not "rebuttal" if it is offered to prove (rather than rebut) the testimony of an opposing party's witness—by definition, "rebuttal" means a "contradiction of an adverse party's evidence." Black's Law Dictionary 1381 (9th ed. 2009). As such, the Court finds this argument baseless to grant Plaintiffs the relief they seek.

* * *

For these reasons, the Court will deny Plaintiffs' Motion to Reconsider exclusion of their proposed expert witnesses Neil Webster and Thomas Card. (Docket No. 584.)

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED as follows:

(1) Plaintiff's Motion to Reconsider relative to their negligence and negligence *per se* claims, and their claim for punitive damages, (Docket No. 583), is GRANTED IN PART and DENIED IN PART as follows:

      (a) Plaintiffs' Motion to Reconsider relative to their claim for punitive damages is GRANTED;

      (b) Plaintiffs' Motion to Reconsider relative to their negligence and negligence *per se* claims is DENIED;

(2) Plaintiffs' Motion to Reconsider relative to their temporary nuisance claims, (Docket No. 585), is DENIED;

(3) Plaintiffs' Motion to Reconsider relative to their proposed expert witnesses Neil Webster and Thomas Card, (Docket No. 584), is DENIED.

IT IS SO ORDERED.

Date:

cc:    Counsel